**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF RHODE ISLAND**

**UNITED STATES OF AMERICA**

**v.s.** **CR07-005-S-2**

**EUDY ANTONIO TEJADA-PICHARDO**
**and**
**RICARDO MEJIA**

**DEFENDANT MEJIA'S POST-HEARING**
**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENT**

Defendant, Ricardo Mejia, has moved to suppress the statements allegedly made by him to law enforcement agents on December 18, 2006. Following a suppression hearing on July 5, 2007, this court granted the defendants' oral motion to provide memoranda outlining issues relevant to the inquiry of whether or not their oral statements should be suppressed. The court should grant this motion filed on behalf of Ricardo Mejia because the undisputed evidence establishes that the arresting officers failed to obtain a waiver of Miranda rights from Mr. Mejia. As a result Mr. Mejia's statements were given without a knowing, intelligent and voluntary waiver of his constitutional rights.

## I. FACTS

For approximately one month prior to December 18, 2006 federal Drug Enforcement Administration (DEA) agents utilized two confidential informants to contact Mr. Tejada-Pichardo (the co-defendant) in order to arrange for the delivery of a quantity of powder cocaine. Beginning on December 11, 2006, DEA agents began recording phone calls from the informants

to Mr. Tejada-Pichardo. During the course of several phone calls the confidential informants made arrangements to purchase several kilograms of cocaine.

On December 18, 2006 Mr. Mejia and Mr. Tejada-Pichardo were arrested at gun point shortly after their arrival Providence. Agent Naylor testified that this was done to give the appearance to the defendants that all four parties were being arrested.

According to the testimony, Providence Police Detective Andre Perez initially advised both men of their Miranda rights in Spanish at the scene. Once Mr. Mejia and Mr. Tejada were in custody at the police station they were handcuffed to the wall in separate interrogation rooms. Detective Perez then separately read the men their rights from Spanish language Miranda forms available at the Providence police station. Mr. Mejia initialed the form and appears to have signed the form in the signature block. The Spanish rights form used in this case contains no indication that the defendants wish to waive their Miranda Rights. The form simply indicates that the person signing understands the rights.

Detective Perez testified that the interrogation of the defendants began immediately after the rights forms were signed. Detective Perez testified that the interrogation of Mr. Mejia was all in Spanish. Detective Perez recalled that Mr. Mejia required his assistance in translating each of Agent Naylor's questions and that his answers to those questions were in Spanish. The police did not record the interrogation of either Mr. Mejia or Mr. Tejada[1].

[1]Both Agent Naylor and Detective Perez testified that they attempted to type a statement while interrogating Mr. Mejia for a second time but that Mr. Mejia talked to them about cooperation and not about this case. Neither Detective Perez nor Agent Naylor reduced their first conversation with Mr. Mejia to statement form. The only written record of that conversation is a summary contained in the report of investigation written by Detective Naylor a few days after the interrogation.

According to Agent Naylor, Mr. Mejia told them that he came to Providence with Mr. Tejada and assumed that Tejada was conducting a drug transaction. Agent Naylor further testified that Mr. Mejia said that Mr. Tejada handed him the gun in the McDonald's parking lot.

Agent Naylor acknowledged that he does not speak Spanish and that Detective Perez acted as his interpreter throughout the interrogation of both men. Detective Perez is a native of Columbia who emigrated to the United States when he was four years old. Although he learned to speak Spanish at home it was clear that he has had no formal training in the Spanish language aside from one high school Spanish class. Detective Perez has had no education or training in interpreting and has not been certified as an expert in the Spanish language by any court. When asked to translate certain phrases from both the Providence police *Miranda* form and a Central Falls *Miranda* form Detective Perez struggled. At one point he translated the phrase "I am a suspect in the crime of " as "I am suspicious of."[2]

## II. ARGUMENT

### A. The government bears the burden of proving that Mr. Mejia's statement was the product of a knowing, intelligent and voluntary waiver of his constitutional rights.

The Supreme Court has held that interrogation of defendants who are in custody is so likely to be coercive that the authorities must inform them of their constitutional rights and they must validly waive those rights before any statement can be introduced against them at trial. *See Miranda v. Arizona, 384 U.S. 436 (1966)*. "The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). In this case, according to the testimony of Agent

[2] This section was not filled out on either Mr. Tejada's or Mr. Mejia's rights form.

Naylor and Detective Perez, Mr. Mejia was detained at gunpoint and brought to the Providence Police Station for questioning. At the station Mr. Mejia was placed in an interrogation room and handcuffed to the wall. It is clear from these facts that he was interrogated while in custody and was therefore entitled to the safeguards provided for by *Miranda* and its progeny.

The government bears the burden of proving by a preponderance of the evidence that the defendant was advised of his constitutional rights and, having been so advised, made a knowing, intelligent and voluntary decision to waive those rights. *United States v. Palmer,* 203 F.3d 55, 60 (1st Cir. 2000). At the outset the courts must presume that a defendant did not waive his rights and may only admit a defendant's statement if the government meets this burden of proving a valid waiver. *See Id* at 60; *United States v. Rosario-Diaz,* 202 F.3d 54, 69 (1st Cir. 2000). The burden on the prosecution is great. *See North Carolina v. Butler,* 441 U.S. 369, 373 (1979). The government has failed to meet its burden in this case.

**B. The police interrogated Mr. Mejia without obtaining a waiver of his rights.**

At the beginning of the analysis, the court must presume that the defendant did not waive his rights. *See Palmer,* 203 F.3d at 60. Although it is true that an express "written or oral statement of waiver of the right to remain silent or of the right to counsel" is not necessary to establish a waiver of those rights, *Butler* 441 U.S. at 373*,* it is also true that such a waiver is "usually strong proof of the validity of that waiver." *Id.* In this case there was no express written or oral waiver of either defendant's right to remain silent or of the right to the assistance of counsel.[3] The advisement of rights form executed by Mr. Mejia does not contain a waiver clause.

[3] The government refers to the rights form in this case as "Spanish rights waiver form" in its objection to the defendants' motions to suppress their statements. Both defendants' forms were admitted at the hearing in this matter as was an agreed upon translation of those forms. It is

There is no language indicating that by signing the form a defendant is expressing a willingness to waive the enumerated rights and to speak to the police.

At the hearing in this matter Detective Perez testified that he read the rights form to Mr. Mejia and asked Mr. Mejia to initial after each of the enumerated rights. He then testified that he asked both defendants to sign the form if they "wanted to". It was very clear that questioning began immediately upon each defendant signing the form. There was no point where Detective Perez, either on his own or acting as a translator for Agent Naylor, asked the defendants if they wished to waive their rights or even if they wished to speak to the police. It is not enough to simply ask a defendant whether he understands his rights. Merely asking an accused whether he understands his rights does not satisfy the duties of an interrogating officer or make any statement the accused might then make admissible. "Miranda requires the interrogating officer to go further and make sure that the accused, knowing his rights, voluntarily relinquishes them." *United States v. Porter*, 764 F.2d 1, 5 (1st Cir. 1985); *United States v. Christian*, 571 F.2d 64 (1st Cir. 1975).

"The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception... The waiver [also] must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Rojas-Tapia,* 446 F.3d 1, 4 (1st Cir. 2006) citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A suspect voluntarily waives his rights when he does so freely without coercion, intimidation or deception.

---

clear that neither form contains a waiver and as such can best be characterized as an advisement of rights and ***not*** as a waiver form.

*Id.* A knowing and intelligent waiver flows from the individual's understanding and appreciation of his rights and the consequences of the waiver. *Id.*

The government has argued that the *Porter* case does not apply to the facts of this case because in *Porter* the defendant had previously invoked his right to counsel. The *Porter* case did involve police questioning of a man who had previously contacted his attorney. However, the decision in that case relied not only on an analysis under *Edwards v. Arizona*[4], as the government has sought to characterize it, but also under the *Miranda* decision. The police failed to ascertain if Mr. Porter waived his Miranda rights. The court made it abundantly clear that police cannot simply inform defendants of their rights and then begin questioning. *Porter*, 764 F.2d at 5. They must go further and ensure that the defendant is voluntarily abandoning those rights. The court cannot infer a waiver from the defendant's silence. Here the police failed to make any inquiry whatsoever of the defendants to ensure that they were in fact waiving their rights to silence and the presence of an attorney. "As was unequivocally said in *Miranda*, mere silence is not enough." *Butler,* 441 U.S. at 373. *Porter* clearly applies here because the police in this case never inquired or elicited Mr. Mejia's waiver.

The government also relies on *Bui v. DiPaolo,* 170 F.3d 232 (1st Cir. 1999), for the proposition that waiver of fifth amendment rights may be inferred from the circumstances of the case. The *Bui* court did say that "[p]recisely when waiver may be implied depends on the circumstance," *id.* at 240, but the facts of this case are distinguishable from *Bui.* Mr. Bui indicated he understood his constitutional rights, but that the police "had nothing" and that the

---

[4] *451 U.S. 477 (1981)* (holding that a defendant's request for counsel must end police questioning).

Constitution would protect him. *Id* at 238. Bui then went on to selectively answer questions put to him by the police. Under the totality of the circumstances, that court ruled that Mr. Bui had waived his Miranda rights because he had verbally expressed his understanding of his rights and exercised his right not to answer certain questions. Unlike Bui, Mr. Mejia never verbally expressed his understanding of his rights and never expressed a waiver of those rights.[5]

In this case the circumstances surrounding the questioning of Mr. Mejia do not demonstrate an knowing and intelligent waiver of his rights. Detective Perez testified that immediately after advising the defendants of their rights and asking them to sign and initial the rights form, he began questioning them. There was no point at which the defendants were asked if they wished to speak to the police. The defendants were not given an opportunity to exercise their right to remain silent or their right to the presence of counsel. The police must go further than simply informing the defendants of their rights. They must ensure that the defendant is voluntarily relinquishing his rights " *United States v. Porter*, 764 F.2d at 5 (1st Cir. 1985); *United States v. Christian*, 571 F.2d 64 (1st Cir. 1975). that was not done in this case.

**C. The circumstances surrounding the interrogation of the defendants in this case do not demonstrate a knowing and intentional waiver of rights.**

The court must ultimately determine if the defendants gave a knowing, intelligent and voluntary waiver of their rights as a product of free and deliberate choice after being made fully aware of the nature of their rights and the consequences of a decision to relinquish those rights. *Moran v. Burbine,* 475 U.S. 412, 421 (1986) (citations omitted) . Those rights must have been reasonably conveyed to the defendants. *See California v. Prysock,* 453 U.S. 355 (1981).

---

[5]It should also be noted that *Bui* was a habeas petition and not a direct appeal.

Because of the limitations of Detective Perez's abilities as a translator the court cannot find that the defendants were made aware of their rights in a manner that assured that they understood not only their rights but also their decision to waive those rights.

Agent Naylor testified that he questioned both defendants with the use of Detective Perez as an interpreter. Agent Naylor speaks no Spanish. Both Agent Naylor and Detective Perez testified that all substantive interrogation of Mr. Mejia was conducted in Spanish. Detective Perez recalled that, when interrogating Mr. Mejia, he had to translate each one of Agent Naylor's questions and Mr. Mejia's responses.

Detective Perez has had no formal training in interpreting and clearly struggled when attempting to translate the rights form that he provided to the defendants. In addition, at the court's request, the court interpreter translated Detective Perez's recitation of the Miranda warnings. Detective Perez was unable to recite those warnings without error. The prosecutor presented no evidence in this case of Detective Perez's ability to accurately translate. The court cannot therefore presume that the requisite warnings were reasonably conveyed to the defendants in a manner that would have allowed them the opportunity to exercise their constitutionally protected rights.

The government elicited testimony from agent Naylor that both defendants had been charged with crimes in the past. There is no evidence before the court that they were ever in custody or interrogated prior to the incident that gave rise to the arrest in this case. As a result such information lends nothing to the discussion of whether the defendants were made aware of their constitutional rights and executed a valid and meaningful waiver of those rights.

Finally the government has elicited testimony that both defendants at some point became

"evasive" when answering questions. It is certainly plausible that "evasiveness" observed on the part of the defendants was a result of Detective Perez's limitations as an interpreter.

## III. CONCLUSION

A careful analysis of all of the circumstances surrounding the police interrogation of Mr. Mejia suggest that the court cannot infer a waiver from the totality of the circumstances. Mere silence does not constitute a waiver and there are no other circumstances in this case that would allow the court to draw such an inference.

Respectfully submitted
Ricardo Mejia
By his attorney,

/s/ Mary S. McElroy
Assistant Federal Defender
10 Weybosset St., Ste. 300
Providence, RI 02903
(401) 528-4281 (401) 528-4285 Fax
Mary_McElroy@fd.org

**CERTIFICATION**

I hereby certify that I electronically filed and served a copy of the within on Sandra Beckner, AUSA on the 12th day of July, 2007.

/s/ Mary S. McElroy