IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | CR 07-005S |
| EUDY TEJADA-PICHARDO a/k/a | : | |
| Enoc Soto and | : | |
| RICARDO MEJIA | : | |

## GOVERNMENT'S TRIAL MEMORANDUM

### I. The Indictment and Elements

The indictment charges EUDY TEJADA-PICHARDO a/k/a Enoc Soto and RICARDO MEJIA with conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846 (Count I) and possession with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2 (Count II). The indictment also charges RICARDO MEJIA with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count III).

The elements of Count I are as follows:

First, that the conspiracy charged in the indictment existed between at least two people to distribute and possess with intent to distribute cocaine; and,

Second, that the defendant willfully joined in that agreement.

If the jury finds the government proved each of the above two elements beyond a reasonable doubt, then they must answer the following question:

Did the conspiracy as a whole involve at least 500 grams of cocaine?

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, §§ 4.18.371 & 4.21.841(a)(1) Comment note 2; see also United States v. Ortiz, 447 F.3d 28, 37 and n.6 (1st Cir. 2006) (affirming the district court's charge asking the jury to determine the quantity of cocaine involved in the conspiracy as a whole).

The elements of Count II are as follows:

First, that defendant on or about December 18, 2006 possessed cocaine, either actually or constructively;

Second, that he did so with a specific intent to distribute the cocaine over which he had actual or constructive possession; and,

Third, that he did so knowingly and intentionally.

If the jury finds the government proved each of the above elements beyond a reasonable doubt, then the jury must answer the following question:

Did the offense involve 500 grams or more of cocaine?

With respect to Count II, to establish aiding and abetting, the government must prove beyond a reasonable doubt:

First, that someone else committed the charged crime; and

Second, that defendant consciously shared the other person's knowledge of the underlying criminal act, intended to help him, and willfully took part in the endeavor, seeking to make it succeed.

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.18.02; United States v. Keene, 341 F.3d 78, 84 (1st Cir. 2003).

The elements of Count III are as follows:

First, that the defendant committed a drug trafficking crime, and,

Second, that the defendant possessed a firearm in furtherance of the commission of that crime.

See Pattern Criminal Jury Instructions for the District Courts of the First Circuit, § 4.18.924.

## II. Factual Summary

The government expects the evidence in this case to show the following:

On December 18, 2006, Tejada-Pichardo [hereinafter Tejada] and Mejia delivered approximately two kilograms of cocaine to an individual cooperating with the Drug Enforcement Administration

(DEA). The deal was arranged through a series of phone calls between the cooperator and Tejada-Pichardo beginning on December 11, 2006. Another individual, a female, introduced the cooperator to Tejada, and served as a link between the cooperator and Tejada on several occasions during the week following December 11, 2006.

The first phone call occurred on December 11, 2006 when the cooperator spoke with Tejada, and Tejada agreed to sell the cooperator six kilograms of cocaine. During this conversation, it was agreed that Tejada would deliver the cocaine to Providence the next day. However, on December 12, 2006, a call was placed to Tejada who stated that he only had three kilograms left because he had disposed of the other three kilograms.

The cooperator spoke with Tejada again on December 18, 2006. Tejada told the cooperator that he was on his way to Providence with two kilograms of cocaine, and that he would bring two more down later. He also told the cooperator that he would be able to give the cooperator a better price when the cocaine was his.

On December 18, 2006, the cooperator received a call from Tejada and was told to meet Tejada at the McDonald's on Broad Street in Providence. Surveillance observed Tejada and Mejia arrive in a Toyota Camry. The female, who had been following the defendants, arrived in a red vehicle. Tejada spoke with the cooperator, placed a large suitcase in the cooperator's vehicle

and then got in the cooperator's car. Mejia got in the red car with the female, and they followed the cooperator's vehicle.

The cooperator gave a signal that the drugs were in the car, and agents stopped both vehicles. Inside the suitcase that Tejada had placed in the cooperator's car, agents found approximately two kilograms of cocaine. Inside the second cooperator's vehicle, agents found a loaded .45 caliber pistol with an obliterated serial number. Upon searching Tejada's Toyota Camry and Mejia's person, agents found drug ledgers.

Both Tejada and Mejia waived their rights and agreed to speak with agents. Mejia admitted that he accompanied Tejada to provide protection and that he assumed this meeting was a drug deal. He said Tejada gave him the gun at McDonald's and that he placed the firearm under the seat in the female's vehicle. Mejia offered to work for the DEA. Tejada, who claimed to be Enoc Soto at the time, told agents that he was only making $500 off the cocaine deal.

## III. Legal Issues

### A. Fed.R.Evid. 404(b)

The government has given both defendants notice pursuant to Fed. R. Evid. 404(b). Tejada filed a motion in limine regarding the government's intention to introduce evidence pursuant to Fed. R. Evid. 404(b). Mejia's counsel has indicated that she intends

to file a similar motion in limine. The government will respond to the defendants' motions in a separate filing.

B. Opinion Evidence

The government will offer the testimony of law enforcement personnel, in particular TFA Michael Naylor, TFA Joseph Colanduano, Detective Andre Perez, and Special Agent Jamie Schiffer, who may testify based upon their extensive experience and training in the field of drug trafficking, to the methods and operations unique to the narcotics business. The government may also elicit testimony about the techniques used by law enforcement in a narcotics investigation.

Based upon their extensive training and experience, the agents may testify to the methods and operations unique to narcotics trafficking. Specifically, they may testify to the price of cocaine; what constitutes a distributable quantity of cocaine; the equipment used in narcotics trafficking; and, the manner in which cocaine is manufactured, transported, packaged, sold and used. The agents may testify to what a cutting agent is, how it is used, and the purpose served by cutting agents. They may also testify to the tactics used by law enforcement in conducting narcotics investigations, including the use of confidential informants and cooperators. They may testify to the meaning of code words and the use of countersurveillance by narcotics dealers to avoid detection by law enforcement.

Based upon their training and extensive experience, the agents may testify that the cocaine seized in this case was a quantity typically held for distribution. They may testify to the price of a kilogram of cocaine, and the effect on price per gram as the cocaine is sold in smaller quantities.

TFA Naylor will testify that the street price of an "eight-ball" of cocaine is $110. TFA Naylor will also testify that drug dealers add cutting agents to drugs to add bulk and increase their profits.

The agents may testify that a drug ledger is a method of accounting for sales in the drug world and that it is not at all uncommon to seize such ledgers during the execution of a narcotics search warrant. They may testify that the papers seized from the defendants are drug ledgers, and they will explain the significance of those ledgers.

The agents may also testify that cell phones and firearms are "tools of the trade" in the drug world. They may explain the steps narcotics traffickers take to disguise their cell phones, and to inhibit law enforcement's ability to engage in electronic surveillance.

They agents may testify that people who engage in cocaine distribution, in particular kilogram quantity drug deals, do not allow unaffiliated individuals near their operations. That is, in their experience, drug dealers do not bring casual observers to a drug deal.

The First Circuit has consistently upheld the introduction of this type of agent testimony. See United States v. Maher, 454 F.3d 13, 23-24 (1st Cir. 2006) (upholding the admission of agent testimony regarding the meaning of words and numbers used in "Post It" notes seized from the defendant's vehicle, and testimony regarding the typical packaging of narcotics); United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir. 2005) (affirming the district court's decision to admit agent testimony regarding the packaging of narcotics and how drug points operate); United States v. Reynoso, 336 F.3d 46, 49 (1st Cir. 2003) (opinion that drug quantity was consistent with possession with intent to distribute); United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003) (agent allowed to testify to meaning of code words); United States v. Rivera-Rosario, 300 F.3d 1, 17 (1st Cir. 2002) (coded drug phrases); United States v. Valle, 72 F.3d 210, 214-15 (1st Cir. 1995).

Experienced investigators may also be "permitted to testify as experts on topics such as the structure of a criminal enterprise, the economics of the drug trade, and the handling of contraband." United States v. Sepulveda, 15 F.3d 1161, 1183-84 (1st Cir. 1993); see United States v. Pinillos-Prieto, 419 F.3d 61, 71-72 (1st Cir. 2005) (allowing agent testimony regarding the dangerous nature of drug organizations and why organizational leaders as well as innocent observers are not present during the actual handoff of narcotics); United States v. Garcia-Morales,

382 F.3d 12, 18-19 (1st Cir. 2004) (agent permitted to testify regarding the structure and operation of a typical drug conspiracy); United States v. DiMarzo, 80 F.3d 656, 659-60 (1st Cir. 1996) (allowing testimony that drug dealers do not take innocent observers to drug deals); United States v. Hensel, 699 F.2d 18, 38 (1st Cir.) (general practices of drug smugglers), cert. denied, 461 U.S. 958 (1983).

Likewise, agents may testify regarding the "tools of the trade" in the drug business. See, e.g., United States v. Alosa, 14 F.3d 693, 696-97 (1st Cir. 1994); United States v. Tejada, 886 F.2d 483, 486-87 (1st Cir. 1989); United States v. Allen, 269 F.3d 842, 846 (7th Cir. 2001) (allowing expert testimony regarding "'tools of the trade'"). In addition to testifying regarding the "tools of the trade," agents have been permitted to testify about the locations in which drug activity occurs. See United States v. Isler, 429 F.3d 19, 26-27 (1st Cir. 2005) (allowing agent testimony about the features of a drug house and that defendant's house was consistent with other drug houses); Ayala-Pizarro, 407 F.3d at 28-29 (allowing testimony regarding how drug points operate).

In this case, agents may testify about the use of drug ledgers in the narcotics business and that several of the items seized from the Defendant Mejia's person and Defendant Tejada's vehicle appear to be drug ledgers. Based upon their experience and training, the agents may explain and interpret the drug

ledgers seized. This type of testimony from an experienced narcotics officer has long been accepted by the First Circuit. See United States v. Echeverri, 982 F.2d 675, 680-81 (1st Cir. 1993) (accepting agent testimony explaining a drug ledger); Tejada, 886 F.2d at 486-87; see also United States v. Balthazard, 360 F.3d 309, 318 (1st Cir. 2004) (admitting notes seized during a search warrant).

C. Physical Evidence

Evidence of "tools of the trade" is admissible to prove the existence of a conspiracy as well as intent to distribute. See United States v. McGuire, 389 F.3d 225, 230 (1st Cir. 2004) (judgment vacated on other grounds) ("'in drug trafficking firearms have become 'tools of the trade' and thus are probative of the existence of a drug conspiracy'"); United States v. Ford, 22 F.3d 374, 383 (1st Cir. 1994) (scales, firearms and large sums of cash are probative of an intent to distribute narcotics as they are "tools of the trade"); Alosa, 14 F.3d at 696 (drug ledgers are admissible as "'real evidence'" to prove that a drug business was conducted in a particular location, to prove the existence of a conspiracy, and to prove the dimensions of a conspiracy); United States v. Camilo Montoya, 917 F.2d 680, 682 (1st Cir. 1990).

D. Conspiracy

A conspiracy is an agreement between two or more persons to commit a particular crime. See United States v. Fenton, 367 F.3d

14, 19 (1st Cir. 2004). It is an agreement to disobey or to disregard the law. See United States v. Pacheco-Ortiz, 889 F.2d 301, 304 (1st Cir. 1989).

The government must prove that an agreement existed to commit the underlying offense and that the defendant elected to join the agreement intending that the underlying offense be committed. See United States v. Medina-Martinez, 396 F.3d 1, 5 (1st Cir. 2005). But, under 21 U.S.C. § 846, the government need not prove the commission of an overt act in furtherance of the conspiracy. See United states v. Shabani, 513 U.S. 10, 17, 115 S.Ct. 382, 383 (1994). Furthermore, the government need not prove that the conspiracy succeeded or was achieved, so long as it proves that there was an agreement to engage in a criminal venture. See United States v. Waldron, 590 F.2d 33, 34 (1st Cir. 1979)(holding in an importation of stolen goods case, the "government need not prove that goods worth more than $5,000 were actually transported to make out a conspiracy . . . so long as the conspirators planned to transport sufficiently valuable goods"); United States v. Belardo-Quinones, 71 F.3d 941, 944 (1st Cir. 1995).

The government must prove that the defendant had knowledge of the basic agreement. See United States v. Marsh, 747 F.2d 7, 12 (1st Cir. 1984). However, the defendant need not have knowledge of all of the details of the conspiracy, nor of all of the participants in the conspiracy, nor of their acts. See

United States v. Martinez-Medina, 279 F.3d 105, 113 (1st Cir. 2002). In fact, in a drug conspiracy, the government need not prove the defendant knew the type or quantity of drug involved, "only that the offense 'involved' a particular type or quantity." United States v. Collazo-Aponte, 281 F.3d 320, 326 (1st Cir. 2002).

Once the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though that connection be slight, is sufficient to convict that defendant of knowing participation in that conspiracy. See Marsh, 747 F.2d at 13. The government must prove that each defendant knowingly and intentionally joined the conspiracy. See Pacheco-Ortiz,889 F.2d at 304. A defendant's knowing participation in a conspiracy may be established by proof of surrounding circumstances. See United States v. Paradis, 802 F.2d 553, 559 (1st Cir. 1986). The agreement need not be express, and may consist of no more than a tacit understanding. See Pacheco-Ortiz, 889 F.2d at id.

E. Acts of Co-conspirators

A co-conspirator is responsible not only for his own acts, but also for the acts of other conspirators done in furtherance of the conspiracy. See Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180 (1946); United States v. Rengifo, 858 F.2d 800, 807 (1st Cir. 1988). For purposes of criminal liability as a conspirator, one who joins an ongoing conspiracy is deemed to

have adopted the prior acts and declarations of his co-conspirators made after the formation of and in furtherance of the conspiracy. Thus, the defendant is bound by all acts committed by co-conspirators in furtherance thereof, including those acts committed without his knowledge before he joined the conspiracy. See United States v. O'Campo, 973 F.2d 1015, 1022-23 (1st Cir. 1992).

F. Recorded Interview

In this case, the government will introduce recorded telephone calls with Tejada and an audio/video recording of Tejada and the cooperator. The admissibility of audio recordings is a matter within the sound discretion of the Court. See United States v. Santana, 898 F.2d 821, 823-24 (1st Cir. 1990). To successfully challenge an audio recording on grounds of audibility, the inaudible parts must be so substantial as to make the remainder of the tape recording more misleading than helpful. See United States v. DiSanto, 86 F.3d 1238, 1253 (1st Cir. 1996); United States v. Font-Ramirez, 944 F.2d 42, 46-47 (1st Cir. 1991); United States v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986).

A decision to permit transcripts of recorded conversations to be used by the jury is a decision within the sound discretion of the Court. It is the recording which is the evidence, not a transcript of the conversation. United States v. Morales-Madera, 352 F.3d 1, 7 (1st Cir. 2003); United States v. Campbell, 874 F.2d 838, 849-50 (1st Cir. 1989); Rengifo, 789 F.2d at 983.

A defendant's own statements in a recorded conversation are admissible by the government as admissions by a party opponent. See Fed.R.Evid. 801(d)(2)(A). The defendant cannot keep from the jury other segments of the conversation reasonably required to place the defendant's admissions in context. Such other parts of the conversation are properly admitted as reciprocal and integrated utterances to put the defendant's statements into perspective and make them intelligible to the jury and recognizable as admissions. These other portions of the conversation are not hearsay. They are not offered to prove the truth of the matter asserted, but only to give context to what the defendant is saying. United States v. Catano, 65 F.3d 219, 224 (1st Cir. 1995); United States v. McDowell, 918 F.2d 1004, 1007 (1st Cir. 1990). Such statements could also be admitted as adopted statements under Fed.R.Evid. 801(d)(2)(B).

G. Statements of Co-conspirators

In this case, the government intends to introduce several recorded conversations between Defendant Tejada and the cooperator. These recorded statements are also admissible against Defendant Mejia pursuant to FRE 801(d)(2)(E), which provides that statements of one co-conspirator may be admissible in evidence against another co-conspirator if such statements were made in furtherance of the conspiracy. Furthermore, co-conspirator statements are not “testimonial” and thus are not

barred by Crawford v. Washington, 541 U.S. 36 (2004). See United States v. Malpica-Garcia, 489 F.3d 393, 397 (1st Cir. 2007).

For co-conspirator statements to be admissible, the Court must be satisfied that "'it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy.'" United States v. Newton, 326 F.3d 253, 257 (1st Cir. 2003). To conserve judicial resources, the Court may conditionally admit the declaration and make its Petrozziello determination, United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977), at the close of all of the evidence, on the record and out of the jury's presence. United States v. Ciampaglia, 628 F.2d 632, 638 (1st Cir. 1980).

The term "in furtherance of the conspiracy" means that the statement must tend to advance the object(s) of the conspiracy as opposed to thwarting its purpose. United States v. Tom, 330 F.3d 83, 93 (1st Cir. 2003); United States v. Piper, 298 F.3d 47, 54 (1st Cir. 2002).

A defendant who joins a conspiracy is responsible for statements of other co-conspirators made in furtherance of the conspiracy even if such statements were made prior to his joining the conspiracy. See United States v. Baines, 812 F.2d 41, 42 (1st Cir. 1987); see also United States v. Marino, 277 F.3d 11, 25 (1st Cir. 2002) ("'As long as it is shown that a party, having joined a conspiracy, is aware of the conspiracy's features and

general aims, statements pertaining to the details of plans to further the conspiracy can be admitted against the party even if the party does not have specific knowledge of the acts spoken of.'")

In making its Petrozziello findings, the Court may consider the hearsay statements, although there must be some extrinsic evidence, which together with the hearsay statements is sufficient to show, more likely than not, that a conspiracy existed. See United States v. Sepulveda, 15 F.3d 1161, 1182 (1st Cir. 1993; Bourjaily v. United States, 483 U.S. 171, 181 (1987) (Supreme Court did not decide whether hearsay statements alone were sufficient to meet the preponderance standard).

H. Defendants' Statements to Law Enforcement

In this case, both defendants made incriminating statements to law enforcement. Tejada's statement does not reference Mejia. Mejia claims that he accompanied Tejada to provide protection on what he believed was a drug deal. He admits to possessing the gun, placing it under the driver's seat in the female's car, and to receiving the gun from Tejada. The government intends to introduce both statements, however, the government will not elicit testimony regarding Mejia's references to Tejada. Specifically, the government will prove that Mejia said he was present to provide protection on what he assumed was a drug deal, and that he possessed the firearm, which he placed under the

drivers seat of the female's car when the police came. The government will not elicit testimony that Mejia said that Tejada gave him the gun. The government also intends to request an instruction from the Court that neither defendants' statements to law enforcement may be used by the jury against the other defendant.

When confronted with a situation in which the government's evidence may violate Bruton[1], the Court is faced with several alternative solutions. The most draconian is to sever the trial; however, "[i]t would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case before hand." Richardson, 481 U.S. at 210.

---

[1] In Bruton v. United States, 391 U.S. 123 (1968), the Supreme Court held that the introduction of a non-testifying defendant's confession against a co-accused violates the Confrontation Clause of the Sixth Amendment. Following Bruton, the Supreme Court decided Richardson v. Marsh, 481 U.S. 200 (1987), holding that the redaction of a defendant's confession such that it does not facially implicate the co-defendant coupled with a limiting instruction avoids any Confrontation Clause problems. The Supreme Court then clarified Richardson by holding that obviously redacted statements, using blanks, the word "delete," symbols or other indications of redaction violate Bruton. See Gray v. Maryland, 523 U.S. 185 (1998).

Recognizing the extreme burden multiple trials imposes on the judicial system, Court have held that "a defendant's out-of-court confession generally will be admitted if it is redacted to delete the co-defendant's name and any reference, direct or indirect, to his or her existence." United States v. Vega Molina, 407 F.3d 511, 519 (1st Cir. 2005). There is no Bruton violation when other evidence is necessary to link a defendant's out-of-court statement to his co-defendant. See Vega Molina, 407 F.3d at 520 ("Statements that are incriminating only when linked to other evidence in the case do not trigger application of Bruton's preclusionary rule."); United States v. Lung Fong Chen, 393 F.3d 139, 150 (2d Cir. 2004); United States v. Walker, 148 F.3d 518, 522 (5th Cir. 1998)[2] ("Where the reference to the defendant is indirect and the jury can only complete the inference by relying on other evidence in the trial, Bruton will not apply."); United States v. Hilario Hilario, 376 F.Supp.2d 141, 145-46 (D.P.R. 2005); see also Mason v. Yarborough, 447 F.3d 693, 695-96 (9th Cir. 2006) (finding no Bruton violation warranting habeas relief).

In this case, the government will not elicit any testimony that falls within Bruton's scope. Each defendant incriminated himself to law enforcement. So long as the government does not ask TFA Naylor or Detective Perez about who Mejia said gave him

---

[2] Abrogated on other grounds by Texas v. Cobb, 532 U.S. 162 (2001).

the firearm or who he accompanied to what he assumed was a drug deal, there is no Bruton problem. In accordance with Vega Molina's guidance, the Court should instruct the jury that Tejada's statements to law enforcement are only evidence against Tejada, and Mejia's statements to law enforcement are only evidence against Mejia. Assuming the Court gives this instruction, there is no reason why these two defendants cannot be tried together and their statements admitted into evidence.

I. Consciousness of Guilt

The government briefed the admissibility of Tejada's alias in its response to Tejada's Motion to Strike.

## IV. Requested Voir Dire and Jury Instructions

The government will file its proposed voir dire questions and jury instructions under separate cover.

## V. Exhibit List and Stipulations

The government will submit an exhibit list under separate cover prior to the commencement of trial.

The government has requested a stipulation from defense counsel as to the chemist's testimony and the testimony of the custodian of records from Sprint-Nextel. The government has also requested a stipulation to the transcripts it intends to introduce. Both defense counsel have indicated that they will inform the government about the stipulations as soon as possible.

## VI. Estimated Time of Trial

The government estimates that it will take three days to conduct the trial.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE,
UNITED STATES ATTORNEY

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj.gov

**CERTIFICATE OF SERVICE**

On August 10, 2007, I caused the within "Government's Trial Memorandum" to be filed electronically and it is available for viewing and downloading from the ECF system.
Electronic notification:

Ms. Mary McElroy
Federal Defender's Office
10 Weybosset Street, Suite 300
Providence, Rhode Island 02903

Law Offices of Thomas G. Briody
The Remington Building
91 Friendship Street, Third Floor
Providence, RI 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj.gov