IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

V. Cr. No. 07-005S

RICARDO MEJIA

# DEFENDANT'S TRIAL MEMORANDUM

## I. The Indictment and Elements

The indictment charges RICARDO MEJIA and his codefendant EUDY TEJADA PICHARDO a/k/a Enoc Soto with conspiracy to distribute and possess with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846 (Count I) and possession with the intent to distribute 500 grams or more of cocaine in volation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(B) and 18 U.S.C. § 2 (Count II). The indictment also charges RICARDO MEJIA with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count III).

The elements of Count I are as follows:

First, that from a time unknown but up to and including December 18, 2006, that the agreement specified in the proposed indictment, existed between at least two people, including the Defendant;

Second, the government must show that the defendant that he was a party to the conspiracy that he had knowledge of the conspiracy, that he intended to agree to a conspiracy and that he intended to commit the substantive offense charged.

The government must show two types of intent: intent to agree and intent to commit the substantive offense.

Sufficient proof of specific intent or knowledge or acquiescence in a larger conspiratorial scheme ordinarily is not supplied by inference from isolated acts. U.S. v. DeLutis 722 F.2d 902 (C.A. 1 (R.I.) (1983)

The government must establish that the defendant is a member of the conspiracy charged. U.S. v. Anguiano 873 F. 2d 1314, 1317 (9th 1989)

The elements of Count II are as follows:

First, the government must establish that the substance involved, if any, was cocaine and that the defendant on or about December 18, 2006 possessed cocaine either actively or constructively,

Second, that the defendant did so with a specific intent to distribute the cocaine over which he had actual or constructive possession,

Third, that he did so knowingly and intentionally;

and,

Fourth, that the amount of cocaine involved was more than 500 grams.

With respect to Count II, to establish aiding and abetting, the government must prove beyond a reasonable doubt:

First, that someone else committed the charged crime; and,

Second, that defendant consciously shared the other person's knowledge of the underlying criminal act, intended to help him, and willfully took part in the endeavor seeking to make it succeed.

The mere knowledge of or presence at a crime does not create accomplice liability.

If the government intends to rely on alleged admissions of the defendant it must establish that the admissions were fairly and accurately related in English.

The elements of Count III are as follows:

First, that the defendant committed a drug trafficking crime, and,

Second, that the defendant possessed a firearm in furtherance of the commission of that crime.

See Pattern Criminal Jury Instructions fo the District Courts of the First Circuit, § 4.18.924.

II. Factual Summary:

On December 18, 2006 at approximately 9:30 p.m. the defendant's, Tejada-Pichardo (hereinafter Tejada) and Mejia were arrested in Providence, Rhode Island. It is alleged that the arrest was the culmination of an ongoing investigation by a Drug Enforcement Agency task force that utilized two confidential informants, one primary and one sub-informant. On or about December 11, 2006 the sub-informant facilitated

contact between the primary informant and defendant Tejada with the conversation being recorded. During this conversation, Tejada allegedly agreed to sell the primary informant, who was portraying himself as a drug dealer in Rhode Island, six kilograms of cocaine. The female sub-informant was acting as an intermediary at this time and was to bring Tejada to Providence, Rhode Island as he did not know how to get there on his own. According to the transcript of this conversation the delivery was to take place the following day December 12, 2006.

The primary informant and Tejada spoke again on December 12, 2006, with Tejada indicating that he had waitied around all day, but his girl had never appeared to give him the ride to Providence. As a result his source had become impatient and had left. Tejada further indicated that only half of the six kilograms were now available but that the suppliers in question did not work at night, so the delivery would have to be postponed.

The two parties were out of contact for several days and spoke again on December 18, 2006. At this time Tejada indicated that he had been able to secure two kilograms of cocaine and that upon delivery of the money for that quantity he could obtain an additional two kilograms of cocaine. Tejada indicated that he was already en route to Providence at the time of this phone conversation. The parties agreed to meet outside of the McDonald’s restaurant on Broad Street in Providence.

Surveillance of the location for the delivery commenced and task force agents observed a red Chevrolet operated by the female sub-informant arrive. The Chevrolet was followed by a green Toyota Camry, operated by Tejada, with Mejia riding in the

passenger seat. All three individuals exited the respective vehicles and entered the McDonald's.

Soon thereafter, the primary informant arrived at the McDonald's and speaking to the female sub-informant indicated that Tejada should come to his vehicle. Tejada approached the passenger side of the primary informant's vehicle and was told to ride with him(informant) and the other two (sub-informant and Mejia) could follow behind in the other vehicle. At this time Tejada approached the red Chevrolet, removed a large black suitcase from that vehicle, placed the suitcase in the backseat of the primary informant's car and got in the passenger seat of that vehicle. The two then exited the McDonald's parking lot followed by the female sub-informant and Mejia who were traveling in the red Chevrolet.

While traveling in the informant's vehicle, the informant can be heard telling Tejada that he wants to see it, Tejada is then seen reaching into the backseat of the vehicle at which point the informant gives a prearranged sign indicating that the material is present. At this time agents moved in and secured all subjects at gunpoint. The agents seized the black suitcase, which was a typical travel sized suitcase. Upon inspection by agents, a hidden compartment was located, not readily apparent to casual observance, which contained approximately two kilograms of a substance alleged to be cocaine. Under the front drivers seat in which the female sub-informant was driving the agents located a .45 caliber High Point Model JHP firearm, with an allegedly obliterated serial number. Also seized were various items and documents.

III. <u>Defense</u>

Mr. Mejia  has no obligation to present evidence, call witnesses, or respond in any manner to the government's allegations. He is presumed to be innocent of these charges. Mr. Mejia may, as has been noted in pre-trial hearings, present a defense based on mere presence.  Mr. Mejia reserves the right to present other defenses, including but not limited to, raising reasonable doubt as to whether the government has met its burden of proof.

A. Mere Presence

To prove a defendant guilty of the crime of conspiracy, the government must show the existence of the conspiracy, and the defendant's voluntary participation.  *Untied States v. Nelson-Rodriguez*, 319 F.3d 12, 27-28 (1st Cir. 2003).  "Mere association" or "mere presence" during conduct that is a part of the conspiracy is insufficient to establish knowing participation.  *Id*.

IV. Legal Issues:

A. Fed.R.Evid. 404(b)

In a prior ruling concerning proposed 404(b) evidence the court reserved ruling subject to additional discovery being obtained with regard to Mr. Mejia's arrest in Lawrence, Massachusetts.  The court indicated in it's ruling that the introduction of such evidence would depend on whether or not Mr. Mejia intended to assert a defense of mere presence.  As it is the defendant intention to mount such a defense this issue should properly be determined before trial commences.  Counsel for the defendant will submit a detailed objection and basis thereof in a separate filing.

B. Transcripts/Recordings

I. Reliability of Government Transcripts

The government made recordings in this case, and produced transcripts. The transcripts are written in English, and offer no point of reference for the Spanish phrases that are translated.

Further, the recordings are broken up, and start in the middle of conversations. The recordings provided to the defendant are not clearly identified by date and time. Further, the transcripts do not accurately depict the conversations. The defendant has obtained transcripts from an independent interpreter/translator, and these transcripts appear to be more thorough—they set forth the Spanish language phrase, followed by the English translation. In addition, the independent interpreter has translated some phrases that were not translated by the government. The transcripts have been produced to the government. The government has said that subject to redaction of certain introductory remarks by the interpreter it agrees to the use of the transcription.

The defendant has previously filed transcripts of recordings made by TFA Naylor of the female sub-informant. Mr. Mejia may use those transcripts during trial.

II. Suppression of tape recorded statements of Tejada as evidence against Mejia

A defendant's own statements in a recorded conversation are admissible by the government as admissions by a party opponent. Fed. R. Evid 801 (d)(2)(A).

The government intends to introduce several tape recorded conversations between Defendant Tejada and the cooperator. The government claims that the recorded statements are admissible against Mejia pursuant to Fed. Rule Evid. 801(d)(2)(E), which

provides that statements of one co-conspirator may be admissible in evidence against another co-conspirator if such statements were made in furtherance of the conspiracy. For co-conspirator statements to be admissible, the court must be satisfied that "it is more likely than not that the declarant (Tejada) and the defendant, were members of a conspiracy when the statement was made, and that the statement was in furtherance of the conspiracy." *U.S. v. Newton*, 326 F.3d 253, 257 (1st Cir. 2003).

In the instant case the government does not have proof of the existence of the conspiracy at the time the tape recordings were made, with respect to 12/11/2006 and 12/12/2006. A defendant who joins a conspiracy is responsible for statements of other co-conspirators made in furtherance of the conspiracy even if such statements were made prior to his joining the conspiracy. U.S. v. Baines, 812 F.2d 41, 42(1st Cir. 1987) Without a proper showing of the existence of a conspiracy these statements can not come in against Mejia. The evidence at the time the recordings were made does not indicate that female subinformant was aware of the existence of Mejia and he was never heard on any recordings. The government does not allege the involvement of any unknown unindicted co-conspirators. Therefore, the only evidence that the government has "at the time that the statements were made" of the existence of a conspiracy are the phone records, if they show some pattern of contact between Mejia and Soto around the time Soto is discussing the procurement of the drugs with the informants, and the veiled reference to getting the drugs in Lawrence. While the court may consider the hearsay statement itself, there must be some extrinsic evidence, which together with the hearsay statements is sufficient to show, more likely than not, that a conspiracy existed. *U.S. v. Sepulveda*, 15 F.3d 1161, 1182 (1st Cir. 1993) Although, the court may conditionally admit the declaration and

make its *Petrozziello* determination, *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1980), at the close of all the evidence, on the record and out of the jury's presence, *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir. 1980), it is submitted that in this case there is not sufficient extrinsic evidence to warrant such conditionally admission. A conditional admission under *Petrozziello*, would allow the government to introduce the tape recorded statements, which do not mention Mr. Mejia, or indicate any connection to Mr. Mejia, or in anyway indicate his involvement in this transaction subject to a later finding that some extrinsic evidence, together with the hearsay statements, is sufficient to show, more likely than not, that a conspiracy existed. *United States v. Sepulveda*, 15 F.3d 1161, 1182 (1st Cir. 1993). Should it later be determined that the threshold for admission had not been met, it would be extremely difficult to cull the highly prejudicial recordings from the juror's minds with a statement by the judge that the tape recorded statements are to be disregarded.

C. Physical Evidence – Drug Ledgers

The defendant, Mr. Mejia by and through his counsel objects to the introduction of the alleged drug ledgers as evidence in this case. The defendant will submit a separate filing contesting the admission of the alleged drug ledgers as evidence against Mr. Mejia.

D. Cross Examination of Witnesses

Mr. Mejia intends to challenge the credibility of the government's witnesses, particularly the primary informant and the sub-informant, in the event they are called as witnesses. Mr. Mejia intends to cross-examine Task Force Agent Naylor regarding the instructions given to the female sub-informant. TFA Naylor has testified that he instructed the female sub-informant that he (Naylor) wanted nothing to do with Lisa

Torres, a former informant who he believed to be unreliable and untrustworthy. Regardless of this fact, TFA Naylor has testified that the female sub-informant brought up Lisa Torres ' s name on approximately half a dozen occasions during the course of the investigation of Mr. Mejia. The DEA has also produced telephone records that show that the female sub-informant was in daily contact with Lisa Torres. Most importantly, the records show that Ms. Torres spoke with the female sub-informant on the day the defendant was arrested, and that she owed Ms. Torres money.

The defendant further may examine the sub-informant about her adherence to Agent Naylor's instructions. This information is not collateral; it is critical to the jury's assessment of the credibility of the female sub-informant.

The Sixth Amendment of the United States Constitution guarantees a defendant the right to confront the witnesses against him. Further, under Federal Rule of Evidence 607, the credibility of a witness may be attacked by any party.

To meet the constitutional standard, the district court "must ensure that the jury is provided with 'sufficient information concerning formative events to make a "discriminating appraisal" of a witness's motives and bias.'" See United States v. Callipari, 368 F.3d 22 (1st Cir. 2004), quoting United States v. Lynn, 856 F.2d 430, 433 (1st Cir. 1988) (quoting United States v. Twomey, 806 F.2d 1136, 1140 (1st Cir. 1986) (quoting United States v. Campbell, 426 F.3d 547, 550 (2d Cir. 1970))).

As Judge Wisdom of the Fifth Circuit wrote in United States v. Mayer, 556 F.2d 245 (5th Cir. 1977):

> A defendant's right to cross-examine fully the witnesses against him is one of constitutional dimensions, secured to federal defendants under the

confrontation clause of the sixth amendment. Alford v. United States, 1931, 282 U.S. 687, 51 S. Ct. 218, 75 L. Ed. 624; United States v. Morris, 5 Cir. 1973, 485 F.2d 1385, 1386-87.

Moreover, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Davis v. Alaska, 415 U.S. 308, 3 15-16, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347, 354. (1974).

"Cross-examination of a witness in matters pertinent to his credibility ought to be given the largest possible scope". United States v. Partin, 493 F.2d 750, 763, (5th Cir. 1974), quoting McConnell v. United States, 393 F.2d 404, 406 (5th Cir. 1968). ***This is especially true where a prosecution witness has had prior dealings with the prosecution or with other law enforcement officials, so that the possibility exists that his testimony was motivated by a desire to please the prosecution in exchange for the prosecutor's actions in having some or all of the charges against the witness dropped,*** United States v. Onori, 535 F.2d 938, (5th Cir. 1976), ***securing immunity against prosecution for the witness,*** United States v. Dickens, 8 Cir. 1969, 417 F.2d 958, ***or attempting to assure that the witness receives lenient treatment in sentencing,*** Beaudine v. United States, 368 F.2d 417, (5th Cir. 1966), (emphasis added). Clearly here there is the acknowledged benefit of the sub-informant's husband receiving favorable sentencing treatment.

E. Mr. Mejia's Statement

Mr. Mejia reportedly gave a statement to Detective Perez and TFA Naylor. Detective Perez and Agent Naylor chose not to record the statement, though they clearly had access to recording equipment. Their choice to not record the statement of Mr. Mejia undermines the trustworthiness of the statement. The defendant asks this court to give a cautionary instruction to the jury at the time Detective Perez and TFA Naylor testify, and during final instructions. The defendant relies on Commonwealth v. DiGiambattista, 813 N.E. 2d 516 (2004) (holding that failure to electronically record a statement entitles defendant to cautionary instruction). In reaching its holding, the SJC recognized

> the exceptionally potent quality of a defendant's statement or confession, and that potency can only be magnified when the evidence of that statement is presented by one or more of the interrogating officers. Where, however, those interrogating officers have chosen ***not*** to preserve an accurate and complete recording of the interrogation, that fact alone justifies skepticism of the officers' version of events, above and beyond the customary bases for impeachment of such testimony.

DiGiambattista, 813 N.E.2d at 533 (emphasis in original).

Mr. Mejia asks the court to provide this instruction to the jury at trial.

F. Missing Witness

The government initially failed to disclose that a female sub-informant was involved in this case. When pressed by the defendant, and following motions to disclose the identities of informants, the government finally disclosed the sub-informant's identity.

The prosecutor objected to defendant's effort to independently investigating the sub-informant's background. The prosecutor declined to provide an address where the sub-informant could be found, and did not disclose any personal information. When disclosure of the sub-informant's identity was made, the prosecutor authorized payment of $2,500.00 dollars, and told the defendants that she was assisting the sub-informant in relocating.

The government had declined to identify the person on whose behalf the sub-informant provided cooperation, saying only that the person was a "family member." The defendant has since determined that the "family member" is in fact the defendant's husband. The government made the sub-informant available to the defendant. The sub-informant appeared for a meeting in the presence of TFA Naylor, DEA Agent Cardello and the primary informant at the grand jury rooms in Providence. Both informants refused to provide any information to counsel for the defendants, and left the meeting under escort from TFA Naylor and SA Cardello. Because of the government's efforts, The prosecutor has indicated that she will not call the sub-informant as a witness in her case in chief.

The female sub-informant did testify following a court order authorizing a limited hearing regarding her communication with Lisa Torres near the time of Mr. Mejia's arrest. The female sub-informant testified that she could not remember telephone

conversations with Ms. Torres, other than one in which she discussed a debt to Ms. Torres. Confronted with evidence of 39 separate telephonic contacts between the female sub-informant and Lisa Torres on December 18, 2006, the female sub-informant claimed she did not have her personal cell phone with her. The defendant requested cell site data to confirm or impeach the female sub-informant's uncorroborated testimony. Due to the delay in disclosing the female sub-informant's relationship with Lisa Torres, the cell phone carrier indicates that the records no longer exist.

Under these circumstances, the defendant asks that this court provide a "missing witness" instruction. The rationale behind a missing witness instruction is that upon " the failure of a party to produce available evidence that would help decide an issue," the jury may infer "that the evidence would have been unfavorable to the party to whom it is available or whom it would ordinarily be expected to favor." United States v. Perez, 299 F.3d 1, 4 (1st Cir. 2002), United States v. St. Michael's Credit Union, 880 F.2d 579, 597 (1st Cir. 1989). A missing witness instruction is proper when a witness is either actually unavailable to the party seeking the instruction or so obviously partial to the other side that the witness is deemed to be legally unavailable. *United States v. Spinosa*, 982 F.2d 620, 632 (1st Cir. 1992). To obtain the instruction a criminal defendant must demonstrate that the uncalled witness is either "favorably disposed" to testify on behalf of the government by virtue of status or relationship, or is "peculiarly available" to the government. *United States v. DeLuca*, 137 f.3d 24, 38 (1st Cir. 1998). Where the court finds either one of these factors, it must consider the explanation for the witness's absence and whether, if called, the witness would be likely to provide relevant, non-cumulative testimony. *Perez*, 299 F.3d at 4-5, *United States v. Lewis*, 40 F.3d 1325, 1336

(1st Cir. 1994). If the court so finds, it may instruct the jury that "where a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Graves v. United States*, 150 U.S. 118, 121 (1893).

She cooperated with the authorities, apparently for the purpose of assisting her husband in obtaining a lower sentence. In these circumstances, this court should find that the female sub-informant is peculiarly unavailable, and favorably disposed toward the government. The co-defendant has served notice of his intention to argue entrapment. He has said he intends to show that the sub-informant, a government agent, improperly induced him. One would expect, if the female sub-informant could rebut these assertions, she would testify on behalf of the government. If the sub-informant does not take the stand in that trial it further negates any conspiracy or accomplice liability in this trial as such, the defendant submits that a missing witness instruction is proper.

V. Estimated time of Trial . The defendant Mejia estimates 3 days.

VI. Jury Voir Dire

Ricardo Mejia, by and through his counsel, requests, pursuant to Rule 24(a) of the Federal Rules of Criminal Procedure, that the court include the attached questions in its general voir dire of the jurors in order that the defense may effectively exercise its challenges for cause and its peremptory challenges.

(1) Each of you should state:
(a) your name;
(b) where you live;
(c) how long you have lived at this address;
(d) your marital status (whether married, single, widowed or divorced);
(e) the number and ages of your children, if any; (0(1) your occupation, its length, or previous employment; (0(2) your spouse's occupation, its length, or previous employment;
(g) the name of your present employer, if any;
(h) whether you have the authority to promote, hire or fire people;
(i) how many people you supervise;
(j) how far you went in school;
(k) what degree(s) you acquired.

(2) Have you ever served in the United States military? If so:
(a) what branch?
(b) when?
(c) rank?
(d) where?

(3) Do you, or do any members of your family or friends know the presiding judge in this case?

(4) Do you, or do any members of your family or friends know the Assistant United States Attorney who will be prosecuting this case?

(5) Do you, or do any members of your family or friends know the defense attorney?

(6) Do you know or recognize any other prospective jury panelist in the courtroom this morning? If so, what is the basis of the relationship? Would such relationship or acquaintance influence your judgment in this case?

(7) Do you have any relatives or friends who are connected with:

(a) law enforcement;
(b) a district attorney's office;
(c) the United States Attorney's Office;
(d) any law enforcement or other quasi-law enforcement agency?

If you have any such relatives or friends connected with law enforcement, have you ever discussed the guilt or innocence of people charged with violating the law?

(8) Have you ever been a police officer or military police officer or worked in a security field either for the state or national government or for private industry?

(9) Do you or do any members of your family know any of the persons who are employed by the government who worked on this case and who will testify in court, and any other witnesses who will testify for the prosecution in this case? (Request prosecutor to read list of agents and proposed witnesses). United States v. Baldwin, 607 F.2d 1295 (9th Cir. 1979).

(10) Have any of you ever sat as a juror in a civil case? If so:
- (a) when?
- (b) where?
- (c) how often?

(11) Have any of you ever sat as a juror in a criminal case? If so:
- (a) when?
- (b) where?
- (c) how often?
- (d) did you reach a verdict?
- (e) what was the verdict?

(12) Have any of you ever served on a jury in a narcotics case? If so:
- (a) when?
- (b) where?
- (c) what was the verdict?

(13) Is there anything about the nature of a narcotics charge that would make it difficult for you to be fair and impartial as a judge of the facts?

(14) Have you ever served on such a case in which there was an acquittal? If so, did the judge comment on the verdict after it was brought in by the jury? If so, what was said by the judge, and who was the judge involved?

(15) Have any of you ever served on a federal or state grand jury? If so:
- (a) when?
- (b) where?
- (c) how often?

(16) Have any of you, any members of your immediate family, or friends been a party in a civil action? If so, please explain.

(17) Have any of you, any members of your family, or close personal friends ever testified in a civil or criminal trial or before a grand jury? If so, please explain.

(18) Have any of you, any members of your immediate family, or friends known anyone who used or was addicted to drugs? If so, please state:

(a) who?
(b) what is their relationship to you?
(c) would that fact affect your judgment in this case?
(d)

(19) What feelings do you have about drugs, in particular, cocaine? Would these feelings affect your judgment in this case?

(20) Do you agree with the fact that an indictment is merely a device for setting in motion the presentation of a case to the jury for your individual determination of a person's innocence or guilt; that it is not proof and that no unfavorable inference may be drawn against a person merely because he or he is charged with a crime?

(21) How do you feel about our basic constitutional presumption that every person charged with a criminal offense is presumed innocent of any crime until proven guilty beyond a reasonable doubt and to a moral certainty? Would you have any difficulty applying this presumption?

(22) Do you realize that the burden of proof is greater for a criminal case than for a civil case? The proof to establish the guilt of any person must be beyond a reasonable doubt.

(23) Do you understand that the burden of proof beyond a reasonable doubt rests with the prosecution? Would you require the prosecution to prove each and every element of an offense to a moral certainty and beyond a reasonable doubt?

(24) If the prosecution failed in its burden of proof with that degree of moral certainty amounting to proof beyond a reasonable doubt, would you have any difficulty in finding a person not guilty?

(25) Do you realize that you must give the defendant the benefit of the presumption of innocence without any mental reservations whatsoever and that you are to consider this presumption of innocence as actual proof of innocence until it is overcome by proof of guilt beyond a reasonable doubt?

(26) Knowing now that the burden of proof is for the prosecution to establish, would you require [defendant] at any time to satisfy you as to his innocence?

(27) Do you understand and accept the principle that a defendant in a criminal case is not required to explain his or her side of the case since the burden of proof does, in fact, rest with the prosecution?

(28) If [defendant] chose to exercise his constitutional right not to testify, would you consider this to be any indication whatsoever of guilt?

(29) If, after you hear the evidence, you thought that [defendant] was probably

guilty-you weren't convinced and you thought the evidence showed he was probably guilty--would you nevertheless be able to return a verdict of not guilty in this case?

(30) Do you realize that you are the sole and exclusive judge of the facts and that you are to judge this case solely on the evidence before you and not allow the fear of later criticism to affect your verdict?

(31) Would any of you change your verdict if a majority of the other jurors believed that a person was guilty and you were in the minority?

(32) Would the fact that you were in the minority influence your vote at all?

(33)Have any of you at this time formed any opinion about the guilt or innocence of RICARDO MEJIA that would require evidence to remove such opinion?

(34) Do you know of any reason, or has anything occurred during this questioning period, that might make you doubtful as to whether you could be a completely fair and impartial juror in this case? If there is, it is now your duty to disclose this.

(35) In deciding whether or not you are going to credit the testimony of a witness, would you consider the witness' conduct on the witness stand, the ability and opportunity to observe, any bias or prejudice, and the probability or improbability of the testimony?

(36)Would any of you tend to give any greater weight or credibility, no matter how slight, to the testimony of a federal agent or prosecution witness merely because they are employees of, or are testifying on behalf of the government? Would you give their testimony greater weight or credibility over that of [defendant] or witnesses on his behalf?

(37)Do we have your assurance that you will not allow your personal feelings about attorneys to affect your judgment about the innocence or guilt of Ricardo Mejia ?

Respectfully Submitted,
Defendant Ricardo Mejia
By his attorney,

/S/ George J. West

George J West, Esq. #3052

One Turks Head Place, Suite 312
Providence, RI 02903-2215
(401)861-9042
(401)861-0330 Fax
Email: GEORGEW180@aol.com

CERTIFICATION

I hereby certify that I caused the filing of the above Trial Memo through the United States District Court for the District of Rhode Island's ECF System be forwarded to Sandra Becker, Esq., A.U.S.A. at Sandra.beckner@usdoj.gov and Thomas G. Briody, Esq. at Tbriodylaw@aol.com on 1/07/08.