IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 07-05-02S |
| | ) | |
| RICARDO MEJIA | ) | |

**MOTION IN LIMINE TO EXCLUDE**
**PAPERS AND DOCUMENTS SEIZED**

Now comes the defendant, Ricardo Mejia, by and through counsel and moves that this Honorable Court enter an order excluding the documents seized from the person of Ricardo Mejia as well a notebook seized from the Toyota Camry, driven by the co-defendant Eudy Tejada-Pichardo, which have been characterized by the government as drug ledgers. Pursuant to Federal Rules of Evidence 401, 402, and 403, 404(b)the defendant moves to exclude the said documents as they do not have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence; the probative value of the alleged drug ledgers is substantially outweighed by undue prejudice to the defendant and would have a tendency to mislead the jury and confuse the issues; and the introduction of the alleged drug ledgers essentially asks the jury to convict the defendant based on impermissible inferences from prior bad acts. The defendant relies upon the accompanying memorandum in support of this argument.

Respectfully Submitted,
Defendant Ricardo Mejia

By his attorney,

/S/ George J. West

George J West, Esq. #3052
One Turks Head Place, Suite 312
Providence, RI 02903-2215
(401)861-9042
(401)861-0330 Fax
Email: GEORGEW180@aol.com

CERTIFICATION

I hereby certify that I caused the filing of the above Motion through the United States District Court for the District of Rhode Island's ECF System be forwarded to Sandra Becker, Esq., A.U.S.A. at Sandra.beckner@usdoj.gov and Thomas G. Briody, Esq. at Tbriodylaw@aol.com on 1/11/2008.

/S/ George J West

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cr. No. 07-05-02S |
| | ) | |
| RICARDO MEJIA | ) | |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE PAPERS AND DOCUMENTS SEIZED**

Mr. Mejia was arrested along with a co-defendant on December 18, 2006. This arrest was the culmination of a month long investigation by DEA Task Force Agent Michael Naylor and others, into suspected narcotics trafficking into Rhode Island by individuals in the Lawrence, MA area. Through the cooperation of a female "sub-informant" Task Force Agent Naylor was able to arrange contact between the co-defendant and the primary male informant, "Jose." Several conversations between the co-defendant and the male informant were subsequently recorded.

At no time was Mr. Mejia identified as being heard on these recordings. Allegedly, these conversations arranged a delivery of cocaine from Lawrence, Massachusetts to the male informant in Providence, Rhode Island. At no time during these conversations was Mr. Mejia mentioned, nor was his involvement in this arrangement alluded to in any way. According to the transcripts of the tape recordings, between the male informant and the co-defendant, the co-defendant was relying on the female informant to lead him to the place of the meeting as he is overheard on the surveillance recordings saying he does not know the way to Providence.

On December 18, 2006 at approximately 7:55 pm the co-defendant contacted "Jose" to advise him that he was en route to Providence, Rhode Island. "Jose" and the co-defendant had another conversation around 9:15 pm at which point the co-defendant indicated that he was close and the two men arranged to meet at the McDonald's on Broad Street, Providence, RI, prompting Task Force Agents to begin surveillance of the area. Around 9:25pm a red Chevrolet being driven by the female informant and a green Camry occupied by the co-defendant and Mr. Mejia arrived at the McDonalds on Broad Street. "Jose" was outfitted with an audio transmitter, which allowed agents to hear conversations taking place within his vehicle.

Upon "Jose's" arrival at the McDonald's, the co-defendant alone is seen approaching the passenger side window of Jose's car. The co-defendant then obtains a suitcase from the red Chevrolet, driven by the female informant, places the suitcase, containing the alleged cocaine on the back seat, and gets into the vehicle alone with the male informant. The suitcase is a black nylon roll on suitcase used by many airline passengers and others. It betrayed noting about its contents. Mr. Mejia was never seen in the red Chevrolet, which is the vehicle that the suspected cocaine was transported in, while the suitcase containing the drugs was simultaneously in that vehicle en route to Providence. During that travel the red Chevrolet was under the exclusive operation and control of the female sub-informant. Further, Mr. Mejia was never seen in Jose's car and was never seen to handle the suitcase, containing the alleged cocaine.

## <u>Argument</u>

**The Documents Seized from Ricardo Mejia at the Time of his Arrest are Not Relevant Evidence of the Offenses Charged.**

The Government has indicated that a number of law enforcement agents may testify at trial regarding drug ledgers. (Trial Memo, pg. 7). Specifically, the agents may testify that, "a drug ledger is a method of accounting for sales in the drug world and that it is not at all uncommon to seize such ledgers during the execution of a narcotics search warrant. They may testify that the papers seized from the defendants are drug ledgers, and they will explain the significance of those drug ledgers." (Trial Memo, pg. 7).

There is insufficient evidence available to support a finding that the documents located on Ricardo Mejia were drug ledgers. (See attached Exhibit A). The documents in question are a series of scraps of paper, one of which is a probation officer's card, which were reportedly on Mr. Mejia's person, and a notebook seized somewhere in Mr. Tejada's Camry (See attached Exhibit B). The alleged drug ledgers contain various words, numbers, and what appear to be phone numbers. The government has not supplied any further information to support the notion that these are ledgers save for the idea that a police witness will take the stand and call them that based on his or her experience.

It is submitted that there are no contemporaneous surveillance reports, photographs, arrests, recordings or other observations by police witnesses, supplied in discovery, to tie these writings into anything relevant to this case. It is manifestly unfair to allow the government to put these documents and papers before the jury and essentially have the jury conclude that they show a pattern of drug dealing and or prior bad acts or any other negative surmise. Police witnesses being allowed to call these documents drug ledgers, without any first hand observations related to the documents, is tantamount to calling the

defendants drug dealers. It is submitted that the evidence is highly and unfairly prejudicial.

The First Circuit Court of Appeals has stated that what needs to be proved for admissibility of drug ledgers depends upon the use to be made of the evidence. *United States v. Alosa*, 14 F.3d 693, 696. (1st Cir. 1994) ("if records manifestly are or are shown by other evidence to be drug records, they are admissible 'real evidence' tending to make it more likely that a drug business was being conducted.")(quoting *United States v. Tejada*, 886 F.2d 483, 487 (1st Cir. 1989)). In such a situation, the records help to show "the character and use of the place where the notebooks were found," just like drugs, scales, and guns." *Id* (quoting *United States v. Wilson*, 532 F.2d 641, 645 (8th Cir. 1976)). Here, it is clear that the alleged drug ledgers are not manifestly drug ledgers, nor have they been shown by other evidence to be drug ledgers, and as such fail the two part test for admissibility as "real evidence" enunciated above.

In addition to being admitted as "real evidence" to prove that a drug business was conducted in a particular location, drug ledgers are also admissible to prove the existence of a conspiracy, as well as to prove the dimensions of a conspiracy. *Id*; *United States v. Echeverri*, 982 F.2d 675, 679 (1993) (drug ledgers admitted where written on earnings statement clearly identified with defendant; the ledger was found lying on a couch within feet of a sizable, easily visible package of cocaine; the column of handwritten figueres on the paper totaled 37,000, the approximate value of the discovered cocaine in the local market.); *United States v. Tejada, 886 F.2d 483, 487 (*1st Cir. 1989) (drug ledger admitted as direct evidence of the conspiracy charged where indictment charged conspiracy involving, "diverse other persons known and unknown,"; the ledger referred

to numerous dates, all of which were in February or March of 1988 and testimony at trial spoke of drug transactions beginning in February of that year; the dates covering a six week span correspond to the dates of the alleged conspiracy; many of the names in the ledger were nicknames of the defendants or witnesses who testified at trial; and incidents within the time frame with unknown persons still fall within the charge of conspiracy because the indictment clearly alleged that other persons were involved).

The instant case is distinguishable from the cases identified above, which support introduction of drug ledgers in cases charging possession with intent to distribute and conspiracy to possess with intent to distribute, in that there is no alignment of the alleged facts of this case to the papers seized. In this case, what the papers do not contain is most illustrative of the records' lack of relevance to any of the offenses charged. There is no indication as to when, or by whom, the notations had been made. There are no dollar signs or terminology attached to the numbers listed on the papers. While possessing some similarities, the documents are largely dissimilar from one another in appearance and content.

In this case, there are writings on various, unassociated scraps of paper and in a separate notebook. Ultimately, there is no suggestion by looking at them that they were made with regard to maintenance of ongoing business records relating to an existing drug venture. There is no correlation between the numbers listed on any of the papers and the amount of cocaine alleged to be involved in this transaction.

In Alosa, the court held that the trial court did not abuse its discretion in admitting the drug ledgers in question, however, the inquiry focused primarily on whether the government had failed to offer evidence, independent of the ledgers, to show that they

qualified as co-conspirator statements made in furtherance of the conspiracy. *Id.* In that case the court found no merit to the hearsay objection, finding that the ledgers were, "real evidence" of the "character and use of the place where the notebooks were found," in that case the defendants' home. *Id*. The instant case is distinguishable because the documents were found amongst Mr. Mejia's personal effects and therefore introduction of the ledgers as character and use evidence is tantamount to propensity evidence introduced to show action in conformity therewith.

While Alosa recognizes that drug ledgers are admissible to prove the existence of, as well as, the dimensions of a conspiracy, *See Id*, the evidence in the instant case does not warrant introduction for such purposes. As previously stated, there is insufficient evidence linking the documents in question to the underlying conspiracy charged, thereby warranting a finding that the documents represent real evidence of the existence of a conspiracy. The instant case is distinct from Alosa, where the court found that although one defendant's own involvement in the drug business was well established through pleas and much other evidence there was little direct evidence at the trial to show active participation in the drug business by the alleged co-conspirator. *Id*. Therefore, the court found that the ledgers, once they were tied to Lisa (co-conspirator) by evidence, made the inference of a conspiracy easy. *Id.*

The nature of the ledgers in that case is distinguishable from the papers in this case. In *Alosa*, one set of papers was found inside a stove in the kitchen, while another set was found in the living room. *Id*. The ledgers contained entries concerning various transactions, including amounts and customers names that were tied to the alleged co-conspirator. *Id*. The papers in question in this case lack any connection to the offenses

charged. Even if determined to be relevant to establishing elements of the crimes charged, the papers at issue here can not survive analysis under Fed Rule Evid. 403 which states in pertinent part:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The instant case supports exclusion of this evidence on the basis of a 403 analysis. As previously stated the evidence in question lacks any solid connection to the instant charges. Any connection that can be drawn by the prosecution is strained and far reaching, amounting to evidence of bad character being introduced to sway the jury's decision. This evidence is extremely damaging and becomes more so because police experts can characterize this evidence in any manner they see fit allowing the jury to draw broad and improper inferences.

Without a solid connection between the contents of these papers and the quantity, structure, or participants of the current charges, the papers probative value are substantially outweighed by the dangers of unfair prejudice to Mr. Mejia, confusion of the issues, and misleading the jury. The papers, to the extent they can be characterized as anything, show no particular connection to the instant charges, or actions. Mr. Mejia submits that there are severe foundational deficiencies which militate against introduction of the documents as direct evidence. Further, even if the evidence is introduced as intent and knowledge evidence under rule 404(b), a 403 analysis is still required. Once, again the foundational issues as well as the potential for the jury to misconstrue or inappropriately utilize this evidence warrants exclusion of the papers found in this matter.

Respectfully Submitted,
Defendant Ricardo Mejia
By his attorney,

/S/ George J. West

George J West, Esq. #3052
One Turks Head Place, Suite 312
Providence, RI 02903-2215
(401)861-9042
(401)861-0330 Fax
Email: GEORGEW180@aol.com

CERTIFICATION

I hereby certify that I caused the filing of the above Motion through the United States District Court for the District of Rhode Island's ECF System be forwarded to Sandra Becker, Esq., A.U.S.A. at Sandra.beckner@usdoj.gov and Thomas G. Briody, Esq. at Tbriodylaw@aol.com on 1/11/2008.

/S/ George J West

The Commonwealth of Massachusetts
DISTRICT COURT DEPARTMENT
LAWRENCE DIVISION

LINDA BRANDIN
PROBATION OFFICER

FENTON JUDICIAL CENTER
2 APPLETON STREET
LAWRENCE, MA 01840

TEL: (978) 687-7184 ext. 2421
FAX: (978) 686-2063

Tu tienes un warrante' en Attleboro Court

llama me

ALEX 4,000 - 160
826 2,295
* - 3912
Pe = 2,755

Ramon 31 NAW = 6914
Juan 84 PUPY = 3174
Ramon 14 RDN = 14
Ram 20 ALEX 87
Guineo 14 R = 400
Manuel 31 8,000
" 14 390
ALEX 102

Seized From Mejia

LA Guinea 14
JUA 15 - R
LA Guinea 28
JUA 62
RAM 14 - 250
ALEX 350 =
311 3 = 80
ALE Guinea 14 = 350

6.025
1.575
1.150
1.705

MDW 28 = 800
RAM 14 =
GAGO 50 =
11 70 =
TALLER 60 =
JOSE 14 =
Guinea 14 =
MAN 28 = 800
Guinea 14 =

Rafy 33 x 24 245
ALEX 3 x 535 - 160

130
Bom 50 x 25
RAM 14 x 24
" 31 x 24
Guinea 14 x 25
Bom Hie 50 x 25
= 225

Guinea 28 x 25
" 14 x 25
JUSO 112 x 23
Guine 28 x 25
ALEX 3 x 80

JOSO 14
Most 14
Post 14
JTP 50

Bom P 50
RAM 14
Most 14
Guin 14
" 14
P. Bcol 100

Seized From 1996 Camry




RDM

5 CDG: 200

Polomo 150 3,600
Viejo 20 600
MBar 56 1,670
RDM 28 670

254
Sulup 14 350
Guined 14 350
Lower ~~36~~ 385
298

7,625

D: 1,555

AMIGO Date

SULMA 14 = 350

Lower 84 = 2015

ARIS 700 = 14,700

MAELO 10 = 270

H Loca 31 = 740

MONT 14 = 350

RAM. 14 = 330

Richar 30 = 660

CHAPA 113 = 2710

21,775

21,775

JAquoline Date

309-988-8944

350-8814

RANI

Lower 100 Guil[illegible] 7

JUAQ. 62 [illegible]

Rich. 30

MAN [illegible] per

Mose 88

MOE 30

Ram 14

Mow 7

Kelv 7

Lower 100

Bond + 25

Primular 14

Date

40 Chapa

7 - viejo

Oso' 30

viejo 10



CULON Date

Per

Gusa 7

Primo [illegible] 50

Manuel 28

Viejo 4

FRANK 450 ₮ 21 SOLDO

KEN 18

SULM 10

VIES 10

PEN Date

RDM 374

JUAQ 200

MAN 28

MONT 16

Ken 30

PUPY 100

Chickens

ADIS 500

SUAQ. 300 -

MAN 84

COCINS 10

BAYON 100

RDM 14