**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR No. 07-05-S** |
| | : | |
| **RICARDO MEJIA** | : | |

**DEFENDANT'S MOTION FOR A NEW TRIAL**

Now comes the defendant, by and through counsel, and hereby moves for new trial based on newly discovered evidence pursuant to Federal Rules of Criminal Procedure, Rule 33(a) (1). As grounds, defendant avers that the government possessed and failed to disclose evidence in the form of a Bureau of Alcohol, Tobacco, and Firearms, Firearms Trace Report which was material and relevant to the defendants case. A memorandum of law in support of this motion is attached hereto.

Respectfully submitted
Ricardo Mejia
By his attorney,

/s/ George J. West

George J. West, Esq.
One Turks Head Place, Suite 312
Providence, Rhode Island 02903
(401) 861 9042
(401) 861 0330 (FAX)
Email: GEORGEW180@AOL.COM

**CERTIFICATION**

I hereby certify that on June , 2008 a true copy of this document was delivered electronically using the CM/ECF system which will send notification to A.U.S.A. Sandra Beckner.

/S/ George J. West

George J. West, Esq.
One Turks Head Place, Suite 312
Providence, Rhode Island 02903
(401) 861 9042
(401) 861 0330 (FAX)
Email: GEORGEW180@AOL.COM

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR No. 07-05-S** |
| | : | |
| **RICARDO MEJIA** | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR NEW TRIAL

## FACTS

Ricardo Mejia was convicted in the Federal District Court for the District of Rhode Island of conspiring to distribute and to possess with intent to distribute 500 grams or more of cocaine, and possession of a firearm in the furtherance of a drug crime, while being acquitted, by a jury, of an additional charge of possession with intent to deliver 500 grams or more of cocaine. At the time of his arrest the defendant was not in actual possession of the handgun but rather was in the vehicle from which the gun was recovered. During a period of post arrest detainment at the Providence Police Department, a Providence police officer who speaks Spanish at home acted as the interpreter during the course of the Mr. Mejia's interrogation. The officer asserted that Mr. Mejia gave a statement to police, which was not recorded or memorialized by signed written statement, that he had received the gun from co-defendant, Eudy Tejada, only to place it under the seat in the vehicle, and that the weapon was not his. At trial the only evidence that Mr. Mejia handled the gun at any time was this statement to police.

No corroborative evidence was put forward in support of establishing the nexus between Mr. Mejia and the gun at issue. On March 11, 2008, after Mr. Mejia's conviction, the United

States Attorney sent a letter to defense counsel disclosing the existence of a handgun trace report created by the Bureau of Alcohol Tobacco and Firearms. (See Ex.A, Letter from AUSA). The trace report which had been turned over at this late date, in the interest of full disclosure, failed to establish any connection between Mr. Mejia and the .45 caliber handgun in question. (See Ex.B, Trace Report). Rather, the trace report indicated that the gun in question had been purchased from IDC America, Inc., located in Plaistow, NH by a Mr. Donald Villens, of Salem, NH. Further, the witness statement of Detective Patricia Cornell of the Providence Police indicates that no identifiable prints were recovered from the .45 Caliber handgun and that an NCIC query turned up negative stolen. (See Ex. B).

Additionally, the trace report turned over by the government, after Mr. Mejia had already been convicted and sentenced, identifies two weapons which were the subject of the trace report inquiry submitted by ATF Agent Jamie Schiffer. The detailed trace information implicates both the .45 Caliber, Haskell JHP45, serial number X451949, seized from the vehicle in which Mr. Mejia was traveling, as well as, a .40 Caliber Iberia JCP40, serial number X734857. (See Ex. B). Although the various incident reports completed by the numerous officers involved in this investigation are replete with details of the seizure of the .45 Caliber weapon, those same reports are devoid of any mention of a second firearm being involved.

It is further noted that two confidential informants were utilized in the course of this investigation and arrest, both of whom were present at the scene of the arrest. Both of the confidential informants were arrested along with Mr. Mejia and his co-defendant to maintain the appearance that they were not cooperating witnesses. The existence and identity of the second female informant in this case was not revealed until March 2007, after a Motion to Compel Identity of Informants was issued by the defense. After learning the identity of the female

informant, it was discovered that there was a significant connection between the informant and Lisa Torres, who at the time of this trial was under indictment for Conspiracy, Obstruction of Justice, and Making False Statements, stemming from her involvement in a scheme to sell cooperation in an effort to exact sentencing considerations on behalf of clients facing Federal Criminal Charges. Ms. Torres, has subsequently signed a letter setting forth the terms of a plea agreement to be entered into with the United States Attorney for the District of Massachusetts, dated June 6, 2008, indicating that at the earliest practicable date she will enter a plea of guilty to all of the charges contained in the indictment.

The trace report, which fails to establish any connection between the gun and Mr. Mejia, or his co-defendant from whom he allegedly received the gun, supports Mr. Mejia's claim that he was an innocent passenger at the scene of this drug transaction and that he did not possess a firearm in the furtherance of drug activity.

## ARGUMENT

**The firearms trace report showing no nexus between the defendant and the handgun represents newly discovered evidence and the government's suppression of the report constituted a failure of the government to meet its Brady/Giglio disclosure obligations, thereby creating a violation of the defendant's right to due process and requiring grant of a new trial.**

Where evidence in a criminal case is newly discovered within three years of a verdict or finding of guilt, a defendant may move for new trial. Fed R. Criminal Procedure, Rule 33(a)(1). If the moving party can demonstrate that 1) the newly discovered evidence was unknown or unavailable to the defendant at the time of trial and 2) that failure to learn of the evidence was not due to lack of diligence by the defendant, the court may grant a new trial after evaluating the new evidence to determine that it is material, (not merely cumulative or impeaching); and that it will probably result in an acquittal upon retrial of the defendant." United States v. Wright, 625

F.2d 1017, 1019 (1st Cir.1980). See also United States v. Wall, 349 F.3d 18, 22 (1st Cir.2003) (citing United States v. Josleyn, 206 F.3d 144, 151 (1st Cir.2000)) (holding that the defendant must show both that the evidence is material and that there is a 'reasonable probability' that it would produce an acquittal upon retrial."

Alternately, if the defendant can show that the new evidence was unavailable at trial because it was (1) suppressed by the government, either willfully or inadvertently, (2) and that it was favorable to the accused, the court may grant a new trial after determining that the evidence is material, and that there is reasonable probability that the evidence would have changed the result of the trial. Brady v. Maryland, 373 U.S. 83 (1963). For the purposes of either standard, material evidence generally includes any information which may be relevant to the integrity of the underlying investigation and the manner in which it was conducted. Kyles v. Whitley, 514 U.S. 434 (1995).

Because the suppression or withholding of evidence by the government constitutes a violation of the defendants right to due process of law, the standard is not whether the evidence would have resulted in an acquittal, but only whether there exists a "reasonable probability" sufficient to undermine confidence in the outcome "that the evidence would have changed the result." United States v. Bagley, 473 U.S. 667, 682, (1985). The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of jury confidence. Id. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." Id.; see also Kyles v. Whitley, 514 U.S. 419, 434-35 (1995) (holding that in Rule 33 motions involving evidence withheld by the prosecution, a defendant must show that a

reasonable probability exists that, had the evidence been disclosed, the result of the trial would have been different and that finding probability of a different result does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. One does not show a Brady violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence in the verdict.); Giglio v. United States, 405 U.S. 150, (1972) (holding that where withheld evidence could in any reasonable likelihood have affected the judgment of the jury, a new trial is warranted).

Furthermore, the duty of the government to disclose evidence is not limited to what has been requested by the defendant. United States v. Augurs, 427 U.S. 97 (1976). Nor is the government's duty limited to evidence the prosecutor is aware of. Strickler v. Greene, 527 U.S. 263 (1999); supra Youngblood v. West Virginia, 547 U.S. 867 (2006). Rather, it includes “evidence known only to police investigators and not to the prosecutor.” Id. Thus, under Brady, “the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.” Government of Virgin Islands v. Fahie, 304 F.Supp.2d 669 (D.Virgin Islands, 2004).

Here the defendant meets each of the four prongs required by Brady to justify a new trial under Rule 33: 1) that the trace report was suppressed or withheld by the government; 2) that it was favorable to his case; 3) that it constitutes material evidence; and 4) that there is reasonable probability that the evidence would have changed the result of the trial. Brady v.Maryland, 373 U.S. 83 (1963).

**1) The government withheld the trace report.**

Here, the government withheld and later disclosed a firearms trace report created by the Bureau of Alcohol Tobacco and Firearms. Where the Brady violation is a matter of delayed disclosure rather than of nondisclosure, "the test is whether [the defense counsel] was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case." United States v. Catano, 65 F.3d 219, 227 (1st Cir.1995) (quoting United States v. Ingraldi, 793 F.2d 408, 411-12 (1st Cir.1986)). The trace report, in this case, was disclosed to the defendant on March 11, 2008. (See Ex.A). The defendant had been arrested on December 18, 2006, and the handgun which was the subject of the trace report was seized at that time. He was convicted on January 31, 2008. Therefore, the trace report was disclosed to the defendant more than a month after trial, and more than a year after the weapon was first seized by police. There was no opportunity for the results of the report to be integrated into the defense argument, or to pursue and develop further avenues of defense based on the results contained in the report. Nor was there any opportunity for the jury to consider the meaning of the trace report results in conjunction with the other evidence in the case.

**2) The report was favorable to the defendant**

The report included information that the owner of the .45 Caliber handgun recovered from the vehicle was a resident of Salem, New Hampshire named Donald Villens and that the gun had been purchased from a dealer in Plaistow, New Hampshire called IDC America. (See Ex.B). There was also a .40 Caliber handgun listed on the trace report which was never mentioned as being involved in this investigation. (See Ex.B). The report is unclear as to whether that gun is also owned by Mr. Villens. However, it is Mr. Mejia's understanding that a trace report of one weapon such as the .45 Caliber seized from the vehicle in which Mr. Mejia was traveling, would not indicate the owner of the weapon and simultaneously provide a list of

all other weapons owned by that same individual, in this case Mr. Villens. Further, the trace report turned over is a printout of the online screen which has cut off information, as opposed to the printable version, which was accessible as indicated by the Printable Version link at the top of the page. (See Ex.B). It is Mr. Mejia's good faith belief that the trace report indicates that two weapons were submitted for trace information by ATF agent Jamie Schiffer in connection with this investigation further highlighting the lack of disclosure of evidence in this case.

If another weapon was seized at the time of the arrest in this case the defendant has no prior knowledge of the existence of this weapon. Additionally, there is no indication as to who was in possession of this weapon. The logical conclusion is that the weapon was in the possession of one of the informants present at the time of the arrest. The report is also unclear as to whether one or both of these weapons were owned by Donald Villens. It is again noted that no connection between Donald Villens and either Mr. Mejia or his co-defendant has ever been established. The report supports the defendants claim that the handgun was not his, and that he had no connection to the gun. The existence of a second undisclosed weapon at the scene where informants were utilized would have been valuable, both in preparation of Mr. Mejia's defense as well as on cross examination of the officers involved in the investigation.

It must also be noted that since the report has been made available to the defense, the defense has learned, irrespective of the contents of the report, no such vendor exists in New Hampshire, nor was the alleged owner, Donald Villens, identified as a resident of New Hampshire. (See Exhibit C, Affidavit of Defense Expert Joseph Broadmeadows). These apparent shortcomings further undermine the credibility of the investigation and all of this information ought to have been presented to the jury.

**3) The trace report constitutes material evidence.**

A withheld firearms trace report has been held to constitute material evidence, giving rise to a due process violation under Brady where the report tended to exculpate the defendant and was favorable to his theory of the case that the gun in question belonged to someone else. See Government of Virgin Islands v. Fahie, 304 F.Supp.2d 669 (D.Virgin Islands, 2004). Furthermore, independent investigation of the trace report results in this case revealed that no record exists of either Mr. Villens, or IDC America in New Hampshire, casting further doubt on whether any connection can reasonably exist between the defendant and the gun. (See Ex.C). Additionally, absent this information Mr. Mejia had no opportunity to pursue the possibility of a connection between Donald Villens and the two utilized informants in this case. Such a connection would have bolstered Mr. Mejia's theory of the case and presented a potential entrapment defense, while simultaneously undermining the efficacy of the police investigation.

The specter of Lisa Torres' involvement can also not be dismissed. In light of Ms. Torres' connection to the female informant and the ongoing Federal investigation that surrounded Ms. Torres at the time this investigation took place, had Mr. Mejia learned of this trace report he could have pursued whether there was any connection between Donald Villens and Ms. Torres. The court must determine the materiality of formerly withheld evidence based on its "cumulative effect" when taken with other evidence, and determine whether, in the absence of the undisclosed evidence, the defendant received a fair trial, "understood as a trial resulting in a verdict worthy of confidence," Kyles v. Whitley, 514 U.S. at 446. Here, as in Catano, Mr. Mejia was prevented by the delay from using the disclosed material effectively in preparing and presenting the defendant's case." Catano, 65 F.3d at 227. The failure of the government to disclose the trace report, which failed to connect Mr. Mejia to the seized .45 Caliber handgun and would have provided further avenues of defense, rises to such a level of materiality.

In Fahie, the court assessed the materiality of the withheld trace report alongside the totality of other facts and evidence, including that 1) the weapon was located in the back seat of the car; 2) that the government did not allege actual, as opposed to constructive possession, of the weapon by the defendant; 3) that the defendant did not own the car; 4) that he adamantly denied that the gun was his; 5) that the government was aware that other persons had been in the car that night, but did not investigate or interview them; 6) that the weapon had not been reported stolen; and 7) that there was no admissible fingerprint evidence, thus leading the court to determine that the report showing no connection between the gun and the defendant was both favorable and material. Government of Virgin Islands v. Fahie, 304 F.Supp.2d 669 In the instant case, the totality of facts which the court must consider alongside the trace report are nearly identical to those present in Fahie and serve not only to support his theory of the case, but to significantly cast doubt on the evidence against him.

On the other hand, where a trace report was not produced by the government until the day of sentencing in a case where the handgun in question was seized in the defendant's apartment; he admitted to handling the gun; claimed it was not his and the trace report supported this claim, the report was held not to be material evidence because the issue was whether the defendant had possessed the gun and not how it had come to be in the house, or who it belonged to. U.S. v. Gillaum, 372 F.3d 848 (7th Circuit, 2004).

While this case presents similar facts to those found in Gillaum, it is distinguishable in that here the handgun was seized from a vehicle that Mr. Mejia did not own, in which he had become a passenger only minutes before, while in Gillaum the gun was found in the defendant's apartment. Compare at 852. Additionally, although Mr. Mejia allegedly gave a statement in which he indicated possession of the firearm in question, Mr. Mejia contested the reliability of

the alleged confession as taken by Officer Perez, of the Providence Police. Primarily, Mr. Mejia argues that Officer Perez was ill prepared and ill suited to act as an interpreter in this situation, was not trained as an interpreter, and had an inherent bias in favor of the police whereby, Mr. Mejia could not fairly be said to have voluntarily and intelligently waived his rights and made any admission in such a context.

As part of the defense, Susanna Torres, an interpreter for the State of Rhode Island, testified as to the differences between a heritage speaker and someone trained as a professional interpreter. (See Ex.D, Tr. 1/30/08, pg.13-14). Ms. Torres testified that the vocabulary of a heritage speaker would be very limited as opposed to someone who has formal training. (See Ex.D, Tr. 1/30/08, pg.14 ln.6-9). Ms. Torres further testified that a heritage speaker usually can only speak the language and understand it but they cannot read it or write it proficiently or they cannot read it or write it at all. (See Ex.D, Tr. 1/30/08, pg.14 ln.15-19). Finally, Ms. Torres testified as to the importance, when interpreting, of taking cultural issues into consideration, (See Ex.D, Tr. 1/30/08, pg.17 ln.15-22), and of the distinctive way of speaking, both in terms of rhythm and the words used, from one Hispanic country to another. (See Ex.D, Tr. 1/30/08, pg.24 ln.15-25).

The prosecution in questioning Officer Perez, stressed the extent of his Spanish language skills. However, on cross examination it was established that although Spanish was the first language Officer Perez learned to speak as a child, he left Colombia at the age of four; he does not read or write Spanish proficiently; and English is the primary language spoken in his home with his children. Therefore, although Mr. Mejia allegedly gave a statement admitting possession of the firearm in question, as did Mr. Gillaum, the facts surrounding Mr. Mejia's alleged confession are in stark contrast with those of the Gillaum case. Compare at 852.

Furthermore, the question in Gillaum was simply whether Mr. Gillaum was a felon in possession of a handgun whereas here the indictment charges Mr. Mejia with possessing a firearm in the furtherance of a drug crime, which requires a nexus between the gun and the drug activity and a showing that the gun is meant to advance or support the drug activity. U.S. v. Garner, 338 F.3d 78 (1st Circ. 2003).

The facts surrounding how a gun came to be in close proximity to a defendant while present at a drug crime, and that defendant's knowledge of the gun, are significant factors in assessing furtherance. Thus the trace report and the ability of the jury to accurately determine the connection between the defendant and the gun constitute material evidence.

**4) The trace report creates a reasonable possibility that the outcome at trial would be different.**

Courts have generally found that newly discovered evidence would not produce a different outcome at trial where such a significant amount of other compelling evidence existed against the defendant or the new evidence was inherently unreliable. See U.S. v. Casas, 425 F.3d 23 (1st Cir. 2005) (evidence that witnesses against the defendant were continuing to engage in drug-dealing meant to impeach those witnesses didn't matter where the other evidence against the defendant was so significant); United States v. Rodriguez-Marrero, 390 F.3d 1 (1st Circ. 2004) (holding that post-sentencing exculpatory statements offered by co-conspirators were inherently unreliable); United States. v. Sumner, 171 F.3d 636 (8th Cir. 1999) (holding that a withheld fingerprint report showing no sign of the defendant's prints on an envelope was not persuasive in light of overwhelming eyewitness testimony against the defendant).

However, where new evidence is persuasive enough, when considered alongside the existing record, to influence the jury's judgment, thereby creating the possibility of reasonable

doubt regarding petitioner's guilt, a different result is reasonably possible. See United States v. Bagley, 473 U.S. 667, 682, (1985); United States v. Agurs, 427 U.S. 97, 120 (1976). In this case, there is no known nexus between the defendant and the gun; no statement by the defendant that he brought the gun with him from his home in Lawrence; and no fingerprints of the defendant found on the gun. Furthermore, the only evidence against the defendant connecting him to the gun is his single statement to police, which was not recorded, despite the availability of video and audio recording equipment at the Providence Police station, nor transcribed into a signed written statement. This alleged admission, was translated by a Spanish speaking police officer with no professional training as an interpreter and an inherent bias in favor of the prosecution for whom he was an agent, the reliability of which was considerably disputed at trial.

When the failure of the government to turn over the trace report is considered alongside the scant and unreliable evidence connecting Mr. Mejia to the firearm; and the further avenues of defense foreclosed by the failure of timely disclosure, the content of the trace report creates the reasonable probability of a different outcome at trial. The results of the report simultaneously corroborate Mr. Mejia's account of what took place, while seriously undermining the depth and reliability of the government's investigation. For these reasons Mr. Mejia respectfully requests that this honorable court grant his motion for a new trial.

Respectfully submitted
Ricardo Mejia
By his attorney,

/s/ George J. West

George J. West, Esq.
One Turks Head Place, Suite 312
Providence, Rhode Island 02903
(401) 861 9042

(401) 861 0330 (FAX)
Email: GEORGEW180@AOL.COM

**CERTIFICATION**

I hereby certify that on the 20th day of June, 2008 a true copy of this document was delivered electronically using the CM/ECF system which will send notification to A.U.S.A. Sandra Beckner.

/s/ George J. West

George J. West, Esq.
One Turks Head Place, Suite 312
Providence, Rhode Island 02903
(401) 861 9042
(401) 861 0330 (FAX)
Email: GEORGEW180@AOL.COM