UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
UNITED STATES OF AMERICA           )
                                   )
     v.                            )
                                   )   CR No. 07-005-S
RICARDO MEJIA.                     )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Ricardo Mejia has filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure (ECF No. 248). For the reasons that follow, the motion is denied.

I. Facts and Background[1]

Mejia was arrested on December 18, 2006 after he and Enoc Soto[2] attempted to sell two kilograms of cocaine to an individual cooperating with law enforcement officials (CI). The drug sale

---

[1] The facts of the offense are largely taken from the decision by the First Circuit affirming Mejia's conviction, United States v. Mejia, 600 F.3d 12 (1st Cir. 2010), and from the record transcript, as noted. The transcript referenced herein is of the four-day jury trial conducted in this matter on January 28-31, 2008, Vols. 1-4, and will be denoted by volume number, e.g., "TT-1."

[2] The decision affirming Mejia's conviction refers to his codefendant Soto, who was also known as Eudy Tejada-Pichardo, as "Tejada." See Mejia, 600 F.3d at 14-15. Because both parties refer to the co-defendant as "Soto" in their motion papers here, this Court uses that name as well.

was observed by several law enforcement officials, including Providence Police Detectives Andre Perez and Joseph Colanduono, and Michael Naylor, a Task Force Agent for the Drug Enforcement Administration (DEA). After being advised of his Miranda rights at the police station, Mejia admitted to Detective Perez and Agent Naylor that his role was to serve as a lookout during the drug deal and that he carried a firearm for this purpose, which he stowed under the driver's seat of the CI's vehicle when police approached.

Mejia and Soto were charged with conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846 (Count I); and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count II).[3] Mejia alone was charged with possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count III). Prior to trial, Mejia filed a motion to suppress his incriminating statements, which was denied by this Court. (See Order, July 30, 2007, ECF No. 86.)

At trial in January 2008, a number of officers, including Detectives Perez and Colanduono and Agent Naylor testified as to the drug transaction, which occurred in a McDonald's parking

---

[3] Soto separately pleaded guilty to both drug Counts and was sentenced to sixty months imprisonment on each count, to run concurrently.

2

lot. Soto and the CI met in the CI's undercover vehicle, which meeting was recorded by a camera hidden in the vehicle, while Mejia stood watch. (TT-1 71-75.) Naylor, Colanduono, and Perez all testified that they observed Mejia standing outside the vehicle and looking around during the meeting between the CI and Soto. (Id.; TT-2 187-89; TT-3 35-39.) Colanduono also testified that he saw Soto speak to Mejia at one point. (TT-3 38.) Naylor, Colanduono, and Perez testified that they observed Soto place a suitcase in the CI's vehicle during the deal. (TT-1 74; TT-2 188; TT-3 34-39.) Naylor testified that Soto and the CI got into the undercover vehicle, while Mejia entered a vehicle driven by a woman named Maria Perez. (TT-1 74-75.) Mejia and Soto were arrested as the vehicles began to drive off. (Id. at 75-76.)

Naylor further testified that the suitcase was seized during a search of the participants' vehicles at the time of arrest and that he observed cocaine in a hidden compartment in that suitcase. (TT-1 111-13.) Colanduono brought the suitcase and drugs to the Bureau of Criminal Identification (BCI) for fingerprinting and then he conducted a field test on the drugs. (TT-3 42-44.) Other officers testified as to testing done on the suitcase and drugs while in police custody.[4] Naylor also

---

[4] Detective Patricia Cornell from BCI testified regarding the fingerprint analysis she performed on the suitcase. (TT-2

testified concerning the firearm that was found in Soto's vehicle (TT-1 114-17) and the incriminating statements made by Mejia during his post-arrest interview. (Id. at 121-25.)

Over Mejia's objection, the government introduced into evidence Mejia's statements as well as phone records showing some 470 phone calls between Mejia and Soto in the six-week period preceding the drug transaction. After a four-day trial in January 2008, a jury found Mejia guilty of Counts I and III but acquitted him as to Count II.

Mejia was sentenced to sixty months imprisonment on each count, to run consecutively, followed by five years of supervised release and surrender to immigration authorities. (See J. 2-4, ECF No. 226.) Mejia appealed, and on March 12, 2010, the First Circuit affirmed his conviction. See United States v. Mejia, 600 F.3d 12 (1st Cir. 2010).

On March 4, 2010, Colanduono, one of the witnesses at Mejia's trial, was arrested by the Rhode Island State Police. He was subsequently indicted on drug charges by a Grand Jury for the State of Rhode Island, convicted and, in February 2011, sentenced to twenty years imprisonment.

---

125-30.) Officer James Hassett testified that he received the drugs from Colanduono and brought them for testing by a state laboratory, after which they were returned to him. (Id. at 93-96.)

4

Shortly thereafter, Mejia filed the instant motion for new trial pursuant to Fed. R. Crim. P. 33(b)(1).[5] In his motion, Mejia argues that the indictment of Colanduono constitutes newly discovered evidence warranting a new trial.[6] The government has filed an objection (see Gov't's Resp. to Def.'s Mot. for a New Trial ("Gov't Mem."), ECF No. 250), in which it asserts that the new evidence is not material to Mejia's conviction, would not likely result in his acquittal, and thus does not warrant a new trial.

II. Discussion

A defendant who asserts that he is entitled to a new trial based upon newly discovered evidence must establish that: (1) the newly discovered evidence was unknown or unavailable to him at the time of trial; (2) the failure to bring the evidence forward was not the result of a lack of due diligence on the

---

[5] Fed. R. Crim. P. 33(b)(1) provides:

(b) Time to File.
 (1) Newly Discovered Evidence. Any motion for a
 new trial grounded on newly discovered evidence
 must be filed within 3 years after the verdict or
 finding of guilty. If an appeal is pending, the
 court may not grant a motion for a new trial until
 the appellate court remands the case.

[6] Mejia had previously filed a motion for new trial (ECF No. 211) challenging, inter alia, the admission of his post-arrest statements, the drug ledger, and certain recorded conversations relating to the drug transaction, and the sufficiency of the evidence generally. The motion was denied. (See Text Order, Feb. 13, 2008.)

defendant's part; (3) the evidence is material (as opposed to being cumulative or impeaching); and (4) the emergence of the evidence will "probably result in an acquittal upon retrial of the defendant."  United States v. Del-Valle, 566 F.3d 31, 38 (1st Cir. 2009); accord United States v. Maldonado-Rivera, 489 F.3d 60, 66 (1st Cir. 2007); United States v. Montilla-Rivera, 115 F.3d 1060, 1064-65 (1st Cir. 1997).  If any one of the four requirements is not met, the motion for new trial must be denied.  Del-Valle, 566 F.3d at 38.  "The remedy of a new trial must be used sparingly, and only where a miscarriage of justice would otherwise result."  Id. (quoting United States v. Conley, 249 F.3d 38, 45 (1st Cir. 2001)).

Here, even assuming in Mejia's favor that (1) the newly discovered "evidence" was unknown or unavailable to him at the time of trial,[7] and (2) Mejia exercised due diligence once that evidence was discovered, it is questionable whether the evidence

---

[7] The government points to Mejia's post-trial letter to the United States Attorney's office (Pl.'s Mem. in Supp. of Mot. for New Trial ("Mem. in Supp."), Ex. 1, ECF No. 248), in which he asserts, inter alia, that Colanduono robbed him of $1,100 and should be investigated for possible involvement in a "criminal racket of extortion of criminal offenders," as an indication that Mejia was aware of Colanduono's corruption at the time of trial.  (Gov't's Resp. to Def.'s Mot. for a New Trial ("Gov't Mem.") 9-10, ECF No. 250.)  This contention is questionable at best, given that Colanduono's subsequent indictment was for conspiracy to possess and distribute drugs -- separate and unrelated conduct not mentioned in Mejia's letter.  In any event, this Court need not determine this issue, given its findings as to the other factors concerning a new trial.

6

he points to -- Colanduono's indictment and conviction more than three years after Mejia's arrest and two years after his trial -- is material and likely to result in his acquittal upon retrial.

A. Materiality of Evidence

Mejia argues that the indictment and conviction of Colanduono constitutes "newly discovered evidence" warranting a new trial because the indictment calls into question Colanduono's veracity as a witness at Mejia's trial and because the allegations regarding Colanduono have "some logical connection with the facts of consequences or the issues involved" in Mejia's case. (See Pl.'s Mem. in Supp. of Mot. for New Trial ("Mem. in Supp.") 4, ECF No. 248.)

The short answer to this claim is that evidence that is "merely impeaching" generally cannot form the basis for granting a new trial. See Maldonado-Rivera, 489 F.3d at 70. The First Circuit has so held on several occasions. See, e.g., United States v. Connolly, 504 F.3d 206, 218-19 (1st Cir. 2007) (holding that newly discovered evidence of material witness's indictment did not warrant new trial); United States v. Vazquez, 857 F.2d 857, 865 (1st Cir. 1988) (holding that witness's post-trial guilty plea to perjury did not warrant a new trial where the perjury was unrelated to the narcotics case and the witness's credibility had been thoroughly attacked); United

7

States v. Previte, 648 F.2d 73, 85 (1st Cir. 1981) (holding that newly discovered evidence of recent illegal activity on part of key prosecution witness was not sufficient to require a new trial where defendant had mounted a substantial attack on that witness's credibility at trial).

Here, Mejia acknowledges that the relevance of Colanduono's indictment is that it renders suspect "the veracity of Colanduono's trial testimony." (Mem. in Supp. 3-4, 4-5.) As such, it constitutes impeaching evidence and, without more, is not material to determining Mejia's own guilt or innocence.

Moreover, this is not a case where the newly-discovered impeachment evidence is so powerful that, if believed, it could render a witness's testimony totally incredible and that witness "provided the only evidence of an essential element of the government's case," so as to warrant a new trial. United States v. Davis, 960 F.2d 820, 825 (9th Cir. 1992) (denying motion for a new trial despite the subsequent indictment and conviction of one of the two principal law enforcement witnesses against defendant);[8] see also United States v. Quiles, 618 F.3d 383, 392

---

[8] In Davis, two law enforcement officers worked undercover in a drug sting and then testified at the defendant's trial. One of the officers was subsequently indicted for conspiring to steal confiscated drug money, signing a false tax return, and illegally structuring a currency transaction to avoid the reporting requirements and was convicted of the structuring count. United States v. Davis, 960 F.2d 820, 824 (9th Cir. 1992). Although the Ninth Circuit assumed for purposes of the

8

(3d Cir. 2010) (noting that "newly discovered evidence that is <u>merely</u> impeaching is unlikely [to be sufficient to warrant a new trial without] something more, i.e., a factual link [described as an "exculpatory connection"] between the heart of the witness's testimony at trial and the new evidence" (emphasis in original)).[9]

In the case at hand, Mejia has demonstrated no link or "exculpatory connection" between his case and Colanduono's indictment. Mejia's case preceded the charges in Colanduono's case by more than three years and involved a sting operation separate from and unrelated to the charges against Colanduono.[10]

---

decision that "the newly-discovered impeachment evidence of [the witness's] criminal activity [was] so powerful that a jury would find his testimony totally incredible," the court nonetheless determined that there was sufficient other evidence to sustain the convictions and affirmed the denial of Davis's motion for new trial. <u>Id.</u> at 825-27.

[9] In <u>Quiles</u>, an essential government witness who had testified at the defendants' trial was indicted on multiple counts of statutory sexual assault on a minor under the age of thirteen years and other similar crimes. The Third Circuit held that a new trial was not warranted because there was no connection between the witness's crimes and the case in which he had testified, and because the witness's conviction did not severely undermine his testimony. <u>United States v. Quiles</u>, 618 F.3d 383, 394-95 (3d Cir. 2010). The court noted that the defendants were not "entitled to a new trial merely because the principal witness adverse to them has turned out to be a vile person." <u>Id.</u> at 395.

[10] As previously noted, Mejia was arrested in December 2006 and tried in January 2008. Colanduono's Rhode Island indictment alleges various offense dates beginning on November 12, 2009 and

9

That Mejia's newly discovered evidence is only relevant as impeachment material is also evident in light of the defense he presented. At trial, Mejia did not dispute that the drug deal with the CI occurred but instead maintained that he was "merely present" during Soto's sale of the drugs. Mejia never argued that the drugs in his case were planted or that someone tampered with the seized drugs. Nor did he otherwise assert any police corruption in connection with his offense. Thus, Mejia's new evidence is not sufficient to satisfy the materiality requirement for a new trial.

B. Likelihood of Acquittal

The Court further finds that Mejia's newly discovered evidence is not likely to result in his acquittal at any retrial. Colanduono's testimony, while helpful, was far from the only evidence against Mejia at trial. In fact, there was a substantial amount of incriminating evidence from Colanduono's fellow law enforcement officers. Colanduono's surveillance testimony was corroborated by Agent Naylor and Detective Perez; his testimony regarding the firearm was corroborated by Naylor and Special Agent Jaime Schiffer. Colanduono's testimony regarding the telephone records was corroborated by the records themselves, and his testimony regarding the chain of custody was

---

concluding March 4, 2010, some two years after Defendant's trial.

10

corroborated by Agent Naylor, Detective Cornell, and Officer Hassett.[11]  See United States v. Custis, 988 F.2d 1355, 1359-60 & n.1 (4th Cir. 1993) (noting that post-trial indictment of two officers who were witnesses at defendant's trial did not warrant a new trial where subsequent charges against officers involved an unrelated case and officers' testimony was corroborated by a third officer).  It follows that, even if Colanduono's testimony at any retrial were not to be believed, there was more than sufficient evidence to convict Mejia of his offenses.  See Mejia, 600 F.3d at 20 (rejecting Mejia's sufficiency of the evidence claim on direct appeal).

Finally, the government submits that, in view of Colanduono's indictment (and subsequent conviction) and because most, if not all, of his testimony was corroborated by other witnesses, Colanduono would not be called as a witness at any retrial.  (Gov't Mem. 11.)  In such case, there would be no independent basis for admitting evidence of Colanduono's alleged

---

[11] Even if Colanduono's testimony regarding the chain of custody of the seized drugs as they traveled between the site of arrest and police headquarters was not fully corroborated, this would not render the drugs inadmissible at any retrial.  See United States v. Anderson, 452 F.3d 66, 81, 80 (1st Cir. 2006) (noting that "the prosecution's chain-of-custody evidence must be adequate -- not infallible" and that, even though there may be gaps in the chain of custody for a certain piece of evidence, such gaps "factor into the weight given to the evidence rather than its admissibility" (quoting United States v. Ladd, 885 F.2d 954, 957 (1st Cir. 1989); quoting United States v. Abreu, 952 F.2d 1458, 1467 (1st Cir. 1992))).

wrongdoing at Mejia's trial, and thus, the newly discovered evidence would not likely be admissible in Colanduono's absence, let alone result in an acquittal.

In short, the evidence on which Mejia's request for a new trial is based -- the indictment of Colanduono more than two years after Mejia's trial -- is not material to his case because it constitutes mere impeachment material that does not undermine critical evidence of Mejia's guilt. In addition, the evidence of Colanduono's wrongdoing, if utilized, would likely not result in Mejia's acquittal at any retrial. Because Mejia has not made the required showing on these factors, his motion for new trial must fail. See Del-Valle, 566 F.3d at 38 (if any one of the four requirements is not met, the motion for new trial must be denied).

III. Conclusion

For all of the foregoing reasons, Mejia's motion for new trial is hereby DENIED.

SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: January 18, 2012